## HOLDER DRIV-UR-SELF, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 91372. Filed November 20, 1964.

*Sydney R. Rubin*, for the petitioner.

*William F. Chapman* and *Stephen M. Miller*, for the respondent.

FISHER, *Judge:* Respondent determined deficiencies in income tax of petitioner for the year ended September 30, 1956, in the amount of $15,063.46, and for the year ended September 30, 1957, in the amount of $22,521.53.

The issues presented for our consideration are: (1) Whether peti-

tioner is entitled to depreciate its vehicles used in its car-rental business, having a useful life of 2 years, by use of the 150-percent declining-balance method or, alternatively, by use of the 100-percent declining-balance method; and (2) whether petitioner, in the year of sale of its vehicles, is entitled to depreciate said vehicles below the resale price.

Respondent has conceded that gains on the disposal of the rental automobiles held over 6 months are taxable as capital gains. In addition, it is agreed by the parties that the loss, if any, incurred by petitioner for the fiscal year ended September 30, 1958, shall be subject to recomputation following the decision by this Court of the issues in this proceeding.

### FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

Petitioner, incorporated in 1954, is a New York corporation with principal office and place of business at 39 Stone Street, Rochester, N.Y. All its issued and outstanding stock is owned by Eben D. Holder, petitioner's president, his wife, and daughter.

Petitioner files its income tax returns on the basis of a fiscal year ending September 30. It filed its income tax returns for each of the years here involved with the district director of internal revenue, Buffalo, N.Y.

Since incorporation, petitioner has been engaged in the business of renting automobiles and, throughout the years involved, petitioner carried on said business under a license or franchise from Hertz-Rent-A-Car-System.

Petitioner rents its automobiles on the basis of time and mileage. The rental rate is a standard one which does not depend upon the age of the car or the extent to which it has been previously used.

Automobiles used by petitioner in its business during the years here involved had useful lives of 2 years and said vehicles had salvage values equal to 50 percent of their cost to petitioner.

People renting cars have a decided preference for new cars. If a customer of petitioner is unable to rent a new car initially, he is likely to return the older car and exchange it for a newer model as soon as one is available, or return the car to petitioner and rent one from a competitor.

Due to customers' preference for new cars, about two-thirds of the total mileage to be put on a car during its useful life to petitioner will be sustained in the first year of use, and about one-third will be sustained in the second year. The average use of a car in petitioner's business is approximately 25,000 miles in the first year and about one-half of that amount in the second year. During the first year of an automobile's use, relatively little expense is incurred for maintenance.

During the second year of its use, maintenance expense becomes substantial.

As soon as a model change occurs the value of the current and prior models drops sharply. This effect, caused by the model change, is greater upon cars in the first year of use than in succeeding years.

For the fiscal year ended September 30, 1956, petitioner used the sum of the years-digits method and straight-line method of depreciation in arriving at the depreciation taken for that taxable period.

In its income tax return for the fiscal year ended September 30, 1957, petitioner used the straight-line, sum of the years-digits, and double declining-balance methods of depreciation.

For the fiscal year ended September 30, 1958, the petitioner used the 150-percent declining-balance method of depreciation with respect to vehicles acquired in that year.

By an amendment to its petition, petitioner has claimed the right to use the 150-percent declining-balance method of depreciation for all vehicles in all years involved, and, in the alternative, the 100-percent declining-balance method of depreciation.

OPINION

The first issue presented for our consideration is whether petitioner is entitled to use the 150-percent or, alternatively, the 100-percent declining-balance method of depreciation on its automobiles which it rents to customers under a franchise from the Hertz-Rent-A-Car-System.

Respondent takes the position that the only proper method of depreciation for petitioner is the straight-line method. Respondent maintains that pursuant to subsection (c) of section 167 [1] of the In-

---

[1] SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

 (1) of property used in the trade or business, or

 (2) of property held for the production of income.

(b) USE OF CERTAIN METHODS AND RATES.—For taxable years ending after December 31, 1953, the term "reasonable allowance" as used in subsection (a) shall include (but shall not be limited to) an allowance computed in accordance with regulations prescribed by the Secretary or his delegate, under any of the following methods:

 (1) the straight line method,

 (2) the declining balance method, using a rate not exceeding twice the rate which would have been used had the annual allowance been computed under the method described in paragraph (1),

 (3) the sum of the years-digits method, and

 (4) any other consistent method productive of an annual allowance which, when added to all allowances for the period commencing with the taxpayer's use of the property and including the taxable year, does not, during the first two-thirds of the useful life of the property, exceed the total of such allowances which would have been used had such allowances been computed under the method described in paragraph (2).

Nothing in this subsection shall be construed to limit or reduce an allowance otherwise allowable under subsection (a).

(c) LIMITATIONS ON USE OF CERTAIN METHODS AND RATES.—Paragraphs (2), (3), and

ternal Revenue Code of 1954,[2] petitioner is not entitled to use the method of depreciation claimed for the reason that the useful life of petitioner's vehicles is 2 years, not 3 or more as specified in the Code.

Petitioner claims its right to use a reasonable method of depreciation under section 167(a) is not proscribed by section 167 (b) and (c). Petitioner argues that section 167(b) expressly provides that nothing contained therein shall limit or reduce an allowance otherwise allowable under subsection (a) of section 167, and that the declining-balance method of depreciation is reasonable as applied to petitioner in this case.

Petitioner, in seeking to use the declining-balance method of depreciation, desires higher depreciation deductions in the beginning of the asset's useful life and lower deductions in the latter part of its useful life.

Under the straight-line method of depreciation, the salvage value is first deducted from the cost or other basis of the asset and a uniform rate of depreciation measured by the useful life of the property is applied to the remainder during each year of such life. Under the declining-balance method, no deduction for salvage value is required in the first instance and the taxpayer may depreciate the asset at a rate not to exceed double the straight-line rate. This rate is applied to the cost or other basis in the first year and then to the undepreciated balance remaining in each of the succeeding years.

Although salvage value need not be deducted initially in determining the annual allowance under the declining-balance method, in no event may the asset be depreciated below the reasonable salvage value. In other words, a taxpayer may obtain maximum acceleration of depreciation, but salvage value, as under other methods, limits the ultimate amount of depreciation. *Hertz Corp.* v. *United States*, 364 U.S. 122 (1960).

Petitioner argues that section 167 (b) and (c) does not apply and makes no claim under it. Petitioner does, however, argue that property which does not qualify for the double declining-balance method of depreciation under section 167 (b) and (c) may, nevertheless, qualify for 150-percent declining-balance depreciation under section 167(a). Petitioner, in making this argument, relies on certain rulings of respondent and the case of *Herbert Shainberg*, 33 T.C. 241 (1959). The first ruling, Rev. Rul. 59–389, 1959–2 C.B. 89, was issued to advise whether one using the declining-balance method of depreciation for

_____

(4) of subsection (b) shall apply only in the case of property (other than intangible property) described in subsection (a), with a useful life of 3 years or more— .

 (1) the construction, reconstruction, or erection of which is completed after December 31, 1953, and then only to that portion of the basis which is properly attributable to such construction, reconstruction, or erection after December 31, 1953, or

 (2) acquired after December 31, 1953, if the original use of such property commences with the taxpayer and commences after such date.

[2] All references are to the Internal Revenue Code of 1954 unless otherwise noted.

Federal income tax purposes must use the same method in computing depreciation on his books of account. The second ruling upon which petitioner relies is Rev. Rul. 60–8, 1960–1 C.B. 113, which was issued to answer the question of whether basis of property is to be reduced by salvage value before applying the applicable rate of depreciation. These rulings were not designed to answer the question of whether subsections (b) and (c) of section 167 were qualifications for subsection (a), or whether subsection (a) was to be regarded without consideration being given to the other two subsections.

Both of the above-cited rulings refer to language contained in another ruling, Rev. Rul. 57–352, 1957–2 C.B. 150. This ruling approved the use of the 150-percent declining-balance method of depreciation on new and used property acquired prior to January 1, 1954, and for used property acquired after December 31, 1953. The use of the 150-percent declining-balance method of depreciation for property newly acquired after December 31, 1953, was not considered in said ruling.

*Herbert Shainberg, supra*, is likewise no authority for petitioner's position. There the taxpayer computed depreciation by segregating its assets into separate component groups and assigning estimated useful lives to each of the groups. The issue was whether respondent had the right to change the method of segregating the assets. There was no disagreement as to the methods of depreciation used. Also, the assets had useful lives of from 3 to 40 years.

Section 167(b) refers to a declining-balance method of depreciation using a rate of twice the rate which would have been used had the annual allowance been computed under the straight-line method. The question now is whether there is a prohibition against use of the 150-percent or the 100-percent rate of depreciation included in the language of the statute. Section 167(b)(2) allows declining-balance depreciation "using a rate not exceeding twice the rate" of the straight-line method. The phrase "not exceeding" is to be interpreted so as to include less than twice the straight-line method, i.e., the 150-percent or 100-percent rates. Therefore, under section 167(c), assets, in order to qualify for depreciation at a rate of 150-percent or 100-percent declining-balance, must have a useful life of 3 years or more.

The last sentence of section 167(b) states: "Nothing in this subsection shall be construed to limit or reduce an allowance otherwise allowable under subsection (a)." This sentence refers to and includes any qualifications which are provided in the Code and which are applicable to the basic allowance set forth in section 167(a). Respondent maintains that subsections (b) and (c) of section 167 are qualifications to the application of subsection (a) thereof, and that this latter section is not to be read alone.

Section 1.167(b)–0(b), Methods of computing depreciation, Income Tax Regs., reads as follows:

(b) *Certain methods.* Methods previously found adequate to produce a reasonable allowance under the Internal Revenue Code of 1939 or prior revenue laws will, if used consistently by the taxpayer, continue to be acceptable under section 167(a). Examples of such methods which continue to be acceptable are the straight line method, the declining balance method with the rate limited to 150 percent of the applicable straight line rate, and under appropriate circumstances, the unit of production method. The methods described in section 167(b) and §§ 1.167(b)–1, 1.167(b)–2, 1.167(b)–3, and 1.167(b)–4 shall be deemed to produce a reasonable allowance for depreciation except as limited under section 167(c) and § 1.167(c)–1. * * *

Thus, where an asset, under the 1939 Code, was being depreciated at the rate of 150 percent of the declining balance, section 167 of the 1954 Code would not require a change to deny application of such method, if the rate of depreciation was providing a reasonable allowance for depreciation. However, for years ending after December 31, 1953, property which is new in use to the particular taxpayer must meet the requirements of section 167(a) as amplified, or qualified by subsections (b) and (c).

In the case of *Hertz Corp.* v. *United States*, 364 U.S. 122 (1960), which involved the determination of depreciation allowable on cars used in an automobile rental business, the Court said at page 124: "Section 167(c) of the Code limits the use of this method [declining-balance] to property 'with a useful life of 3 years or more.'" While the Court did not engage in a lengthy discussion of the reasoning behind this statement, we feel it is controlling in this case and we so hold.

Assuming *arguendo* that petitioner was correct in its position, a method of depreciation permitting full depreciation of an asset having a useful life of 2 years within 9 months (150-percent rate) or in 12 months (100-percent rate) of its purchase date cannot be termed reasonable. We think that the straight-line method used by respondent in his statutory notice provided for a reasonable allowance of depreciation for petitioner's automobiles. His determination is presumed to be correct and, in our opinion, petitioner has failed to demonstrate error. We, therefore, hold for respondent on this issue.

The remaining issue for our determination is whether petitioner is entitled to depreciate its assets, in the year of sale, below the resale price.

Respondent concludes that depreciation on petitioner's rental vehicles is to be determined under a 2-year straight-line method, taking into account a salvage value equal to 50 percent of the vehicle's cost, or its undepreciated basis at the beginning of the year of sale, whichever is greater.

There is no rule of law which disallows claimed depreciation in the year of sale purely because the sales price exceeds the adjusted basis

at the beginning of the year. *Macabe Co.*, 42 T.C. 1105 (1964). Cf. *Smith Leasing Co.*, 43 T.C. 37 (1964).

Concepts of useful life and salvage value are necessarily based upon approximations and estimates. *Massey Motors* v. *United States*, 364 U.S. 92, 105 (1960), and *Detroit Edison Co.* v. *Commissioner*, 319 U.S. 98, 101 (1943). Respondent's regulations explicitly forbid redetermination of salvage value after the time of acquisition of the asset merely because of changes in price levels. They provide, however, for a redetermination of salvage value only if respondent redetermines the useful life of the asset. Sec. 1.167(a)–1(c).[3]

Respondent has not questioned the useful life of petitioner's vehicles and has made no redetermination in this regard. In fact, petitioner and respondent have agreed, by means of stipulation, that the vehicles in question had a 2-year life and a salvage value of 50 percent of petitioner's cost.

The parties have thus resolved any questions as to useful life and salvage value for all purposes, including the question of determining depreciation in the year of sale. We, therefore, hold that petitioner is entitled to depreciate its vehicles in the year of sale, to the amount agreed upon to be salvage value, without limitation by reason of the adjusted basis at the beginning of that year.

*Decision will be entered under Rule 50.*

---

[3] Sec. 1.167(a)–1 Depreciation in general.

\* \* \* \* \* \* \*

(c) *Salvage.* (1) Salvage value is the amount (determined at the time of acquisition) which is estimated will be realizable upon sale or other disposition of an asset when it is no longer useful in the taxpayer's trade or business or in the production of his income and is to be retired from service by the taxpayer. Salvage value shall not be changed at any time after the determination made at the time of acquisition merely because of changes in price levels. However, if there is a redetermination of useful life under the rules of paragraph (b) of this section, salvage value may be redetermined based upon facts known at the time of such redetermination of useful life. \* \* \*

