SILVER QUEEN MOTEL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4771–69. Filed March 25, 1971.

*John R. Kline,* for the petitioner.
*Joe K. Gordon,* for the respondent.

FORRESTER, *Judge:* The Commissioner has determined deficiencies in petitioner's income tax of $5,579.30 and $3,876.35 for the taxable years ending in 1966 and 1967, respectively. As petitioner has now conceded that it may not employ the double declining-balance method to compute depreciation for certain of its properties, the only issue remaining for our decision is whether petitioner may now compute depreciation by using the 150-percent declining-balance method in lieu of the straight-line method.

### FINDINGS OF FACT

All of the facts have been stipulated and are so found.

Petitioner filed its Federal corporate income tax returns for 1966 and 1967 with the district director of internal revenue in Reno, Nev. At the time of the filing of the petition herein, petitioner's principal office was in Carson City, Nev., and its principal place of business was in Tonapah, Nev.

Between December 31, 1963, and December 27, 1965, Lola Johnson (hereinafter referred to as Lola) either constructed or acquired new properties which were used in operating a motel business. Lola depreciated these properties on the declining-balance method using twice the rate which would have been used had the annual allowance been computed using the applicable straight-line rate (which method is hereinafter referred to as the double declining-balance method).

Pursuant to the laws of Nevada, Lola incorporated petitioner on December 27, 1965. Upon petitioner's incorporation, Lola caused the motel properties to be transferred to petitioner in exchange for all of petitioner's stock. During 1966 and 1967, petitioner continued the operation of the motel business and on its returns continued to depreciate the motel properties under the double declining-balance method.

OPINION

Section 167(a) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear (including a reasonable allowance for obsolescence) of property used in the trade or business or held for the production of income.[1] In the case of certain depreciable property which qualifies under section 167(c), the Code's statutory scheme expressly allows a taxpayer to use the double declining-balance method of computing depreciation as described in section 167(b)(2). Petitioner now concedes that its depreciable motel properties do not qualify under section 167(c) because the original use of the motel properties did not commence with it. See Rev. Rul. 56–256, 1956–1 C.B. 129. Therefore, in lieu of the double declining-balance method, petitioner seeks to compute depreciation under the less accelerated (but acceptable) declining-balance method using a rate of 150

---

[1] Unless otherwise specified, all section references are to the Internal Revenue Code of 1954, as amended.

SEC. 167. DEPRECIATION.

(a) GENERAL RULE.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

    (1) of property used in the trade or business, or

    (2) of property held for the production of income.

(b) USE OF CERTAIN METHODS AND RATES.—For taxable years ending after December 31, 1953, the term "reasonable allowance" as used in subsection (a) shall include (but shall not be limited to) an allowance computed in accordance with regulations prescribed by the Secretary or his delegate, under any of the following methods:

    (1) the straight line method,

    (2) the declining balance method, using a rate not exceeding twice the rate which would have been used had the annual allowance been computed under the method described in paragraph (1),

    (3) the sum of the years-digits method, and

    (4) any other consistent method productive of an annual allowance which, when added to all allowances for the period commencing with the taxpayer's use of the property and including the taxable year, does not during the first two-thirds of the useful life of the property, exceed the total of such allowances which would have been used had such allowances been computed under the method described in paragraph (2).

Nothing in this subsection shall be construed to limit or reduce an allowance otherwise allowable under subsection (a).

(c) LIMITATIONS ON USE OF CERTAIN METHODS AND RATES.—Paragraphs (2), (3), and (4) of subsection (b) shall apply only in the case of property (other than intangible property) described in subsection (a) with a useful life of 3 years or more—

    (1) the construction, reconstruction, or erection of which is completed after December 31, 1953, and then only to that portion of the basis which is properly attributable to such construction, reconstruction, or erection after December 31, 1953, or

    (2) acquired after December 31, 1953, if the original use of such property commences with the taxpayer and commences after such date.

percent of the applicable straight-line rate (which method is here-inafter referred to as the '150-percent declining-balance method). Respondent, on the other hand, argues that having erroneously originally elected the double declining-balance method, petitioner is now restricted to using the straight-line method.[2]

In initially computing depreciation by using the double declining-balance method, petitioner tried to take advantage of one of the liberalized accelerated depreciation rates allowed by the remedial provisions of section 167(b). Now that petitioner acknowledges that it may not use the double declining-balance method as provided in section 167(b)(2), respondent would deny petitioner's request to fall back upon the 150-percent declining-balance method and would relegate it to the straight-line method. Thus, if respondent's contention were to prevail, a taxpayer attempting initially to elect the accelerated depreciation methods of section 167(b) would be put to an "all or nothing" decision the dampening effect of which upon the taxpayer's choice would significantly detract from the liberalizing influence which was obviously intended by the enactment of sections 167(b) and 167(c).

Bearing this in mind, we now examine respondent's contentions.

Respondent relies in particular upon section 1.167(b)-1(a), Income Tax Regs., which provides in part that:

The straight line method may be used in determining a reasonable allowance for depreciation for any property which is subject to depreciation under section 167 and *it shall be used in all cases where the taxpayer has not adopted a different acceptable method with respect to such property.* [Emphasis supplied.]

He urges that the emphasized language represents the "basis for requiring a taxpayer to elect an accelerated method of depreciation in the first return he files claiming depreciation." We cannot agree. Neither this regulation nor section 167(a) requires respondent's requested harsh result.

The regulation in this case is unlike those promulgated under the broad rule-making powers specifically granted to the Commissioner (through the Secretary of the Treasury) under other sections of the Code. See, e.g., secs. 167(d), 453. Thus, in interpreting section 1.167(b)-1(a), Income Tax Regs., we must keep in mind that the regulation provides only collateral clarification of the statute; the regulation

---

[2] In general, where a taxpayer's depreciable properties fail to qualify under section 167(c), the taxpayer may use any reasonable and consistently applied method of computing depreciation so long as the method used does not result in deductions for depreciation in excess of such amounts as may be necessary to recover the unrecovered basis (less salvage) during the properties' remaining useful life. Secs. 1.167(a)-1(a), 1.167(b)-0(a), Income Tax Regs. For the particular motel properties involved here, respondent apparently concedes that the 150-percent declining-balance method yields a "reasonable allowance" under sec. 167(a) independent of the provisions of sec. 167(b) or 167(c). Therefore, the issue of whether the 150-percent declining-balance method yields a "reasonable allowance" under sec. 167(a) is not at issue.

cannot direct a procedure which effectively modifies the substantive rule of section 167(a). Cf. *Koshland v. Helvering*, 298 U.S. 441 (1936). Since respondent does not question that the 150-percent declining-balance method would have produced a "reasonable allowance" for depreciation had petitioner selected that method initially, it would seem that that method would yield no less "reasonable" an allowance now that petitioner seeks to substitute it for the unacceptable double declining-balance method. Cf. *Holder Driv-Ur-Self, Inc.*, 43 T.C. 202 (1964). In addition, the regulation lacks specificity as it states neither how nor when a taxpayer must adopt an acceptable method of computing depreciation. Viewed in this light, the language of the regulation is not so "imperative" as respondent claims but is more in the nature of a directory rule intended as a stopgap in the regulatory scheme. See *Georgie S. Cary*, 41 T.C. 214 (1963). For example, in those situations where the taxpayer fails to make an affirmative selection of any acceptable method of computing depreciation and then, after challenge, refuses or forgets to adopt an acceptable method, the Commissioner (in order to administer properly the collection of the revenues) would be justified in choosing the straight-line method for him.

To be sure, Congress has given to the Commissioner full regulatory powers in the accounting area, see, e.g., sections 167(e), 446–472, and it cannot be gainsaid that methods of computing depreciation are accounting methods. See sec. 1.446–1(a)(1), Income Tax Regs. Respondent asserts the applicability of section 446(e) which provides that:[3]

a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate.

---

[3] Respondent also places emphasis upon sec. 1.167(e)–1(a), Income Tax Regs., which states:

Sec. 1.167(e)–1 Change in method.—(a) *In general.* Any change in the method of computing the depreciation allowances with respect to a particular account is a change in method of accounting, and such a change will be permitted only with the consent of the Commissioner, except that certain changes to the straight line method shall be permitted without consent as provided in section 167(e)(1) and paragraph (b) of this section and as provided in section 167(e)(2) and paragraph (c) of this section. Except as provided in paragraph (c) of this section, a change in method of computing depreciation will be permitted only with respect to all the assets contained in a particular account as defined in § 1.167(a)–7. Any change in the percentage of the current straight line rate under the declining balance method, as for example, from 200 percent of the straight line rate to any other percent of the straight line rate, or any change in the interest factor used in connection with a compound interest or sinking fund method will constitute a change in method of depreciation and will require the consent of the Commissioner. Any request for a change in method of depreciation shall be made in accordance with section 446 and the regulations thereunder and shall state the character and location of the property, method of depreciation being used and the method proposed, the date of acquisition, the cost or other basis and adjustments thereto, amounts recovered through depreciation and other allowances, the estimated salvage value, the estimated remaining life of the property and such other information as may be required. For rules covering the use of depreciation methods by acquiring corporations in the case of certain corporate acquisitions, see section 381(c)(6) and the regulations thereunder.

In initially establishing a method of computing depreciation for a newly acquired item, a taxpayer may select any method which results in a reasonable allowance for depreciation, and he must thereafter consistently apply that method to the item. Sec. 1.167(b)–0(c), Income Tax Regs. Thus, the choice of an acceptable method is the taxpayer's, but a change to another acceptable method requires the Commissioner's consent.

However, the notion of changes in accounting method necessarily implies that a new accounting method is being substituted for a previously regularly used accounting method. Section 446(e) takes express notice of that implication of regular prior use.[4] Consequently, in order to come within the language of section 446(e), petitioner's attempt to now adopt the 150-percent declining-balance method would have to constitute an attempt to change an accounting method which it has been using "regularly." Here, petitioner has not "regularly" computed the depreciation deduction for the motel properties under the double declining-balance method because the Commissioner has denied it that choice in the first instance, i.e., for the very first year of petitioner's existence and perforce for the first year of its attempted use of the unacceptable method. Since it has never had the opportunity to use "regularly" a method of computing depreciation for the motel properties, petitioner cannot be considered to be changing its method of accounting for depreciation and, therefore, section 446(e) does not apply.

The situation here differs materially from those cases where the taxpayer has, of his own volition, adopted an acceptable method of computing depreciation and has sought thereafter to change from the acceptable method originally used to another acceptable method which he finds more favorable. See *Clinton H. Mitchell*, 42 T.C. 953, 968 (1964); *M. Pauline Casey*, 38 T.C. 357, 385 (1962); cf. *J. E. Riley Investment Co.* v. *Commissioner*, 311 U.S. 55 (1940); *Pacific National Co.* v. *Welch*, 304 U.S. 191 (1938); *Estate of George Stamos*, 55 T.C. 468 (1970), and cases cited. Similarly, the present case differs from those cases where the taxpayer has chosen an acceptable method of depreciation but has chosen that method for a taxable year other than the first year in which depreciation might have been taken. See *Missouri Public Service Co.* v. *United States*, 370 F. 2d 971 (C.A. 8, 1967); *Henry M. Rodney*, 53 T.C. 287 (1969). In those cases "It is the taxpayer's choice of year that is in error, not his choice of method." 53 T.C. at 317.

---

[4] While sec. 1.167(e)–1(a), Income Tax Regs., does not expressly require, as a condition precedent to its applicability, regular prior use of a method of computing depreciation, we feel that such a notion of regular prior use is implicit in the notion of change of accounting method.

While a desire for an efficiently administered revenue collection process is a primary reason for granting the Commissioner broad discretion to establish certain accounting rules, see *M. Pauline Casey*, *supra* at 386, it is noteworthy that respondent points to no significant administrative complication which would arise were petitioner now allowed to adopt the 150-percent declining-balance method. Although computation of depreciation under the straight-line method is no doubt a simpler arithmetical choice than a similar computation under the 150-percent declining-balance method, the extra calculations involved hardly rise to the level of the "burdensome uncertainties upon the administration of the revenue laws" which the Supreme Court feared in *Pacific National Co.* v. *Welch*, 304 U.S. 191, 194 (1938). Furthermore, respondent has in no way intimated that petitioner attempted to delay or otherwise obstruct the operation of the revenue laws. Thus, we are not presented with a situation where lack of good faith on the taxpayer's part may cause his plea for relief to be denied. Compare *John Harper*, 54 T.C. 1121, 1143–1146 (1970), with *Baca* v. *Commissioner*, 326 F. 2d 189 (C.A. 5, 1964), reversing 38 T.C. 609 (1962); *Hornberger* v. *Commissioner*, 289 F. 2d 602 (C.A. 5, 1961), reversing a Memorandum Opinion of this Court; and *F. E. McGillick Co.*, 42 T.C. 1059 (1964).

The instant case is distinguishable from the factual pattern we faced in *Peter Mamula*, 41 T.C. 572 (1964), revd. 346 F. 2d 1016 (C.A. 9, 1965). There the taxpayer originally reported his gain from sales of real estate upon the deferred-payment method, a method inconsistent with the installment method the taxpayer later attempted to elect. In refusing to allow the taxpayer to recompute his gain under the installment method we relied upon the fact that the applicable regulation specifically required the taxpayer to set forth *in his return* an election to report gain upon the installment basis. See sec. 1.453–8(b), Income Tax Regs. As previously stated, the regulation here does not specify how or when a taxpayer must adopt an acceptable method of depreciation.

For the purposes of this case, we conclude that the result in Rev. Rul. 67–338, 1967–2 C.B. 102, imposes too strong a sanction for petitioner's concededly mistaken initial choice of an unacceptable method of computing depreciation.[5] While the suggested result of respondent's ruling

---

[5] In that ruling the taxpayer erroneously used the double declining-balance method of computing depreciation on an item of property which did not qualify under sec. 167(c). It was ruled that the taxpayer could not substitute the 150-percent declining-balance method but was relegated to the straight-line method. We again point out that petitioner had never in fact "used" the double declining-balance method, since its first year of existence is here in issue. Thus, Rev. Rul. 67–338 does not apply to this case.

should not lightly be disregarded, we have previously denied effect to another such ruling in the election area when we believed that the ruling constituted too strict an interpretation of the Code and its accompanying regulations. *F. E. McGillick Co., supra.*

In order to permit the parties to calculate the depreciation under the 150-percent declining-balance method,

*Decision will be entered under Rule 50.*