JOHN D. THOMPSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thompson v. Commissioner
Docket Nos. 4544-82, 20143-83.
United States Tax Court
T.C. Memo 1987-175; 1987 Tax Ct. Memo LEXIS 171; 53 T.C.M. (CCH) 500; T.C.M. (RIA) 87175; March 30, 1987. George Constable, for the petitioner. Henry Thomas Schafer, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioner's Federal income tax as follows: Additions to Tax
Taxable Year Ended
Deficiency
[1] Sec.6653(a) Sec.6653(b)
December 31, 1976
$3,260.00
[2] $164.00
December 31, 1977
46,602.00
2,330.01
$23,301.00
December 31, 1978
64,078.00
3,203.90
32,039.00
December 31, 1979
164,107.00
8,255.00
82,053.50
*173 After concessions, [3] the sole issue for determination is whether, upon respondent's redetermination of the useful lives of petitioner's depreciable assets, petitioner may change from the straight-line method of computing depreciation to the declining balance method with respect to those assets, where petitioner neither sought nor secured respondent's approval to do so. *174 FINDINGS OF FACT All of the facts have been stipulated pursuant to Rule 122 and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Seattle, Washington, when he filed his petitions in these cases. On October 16, 1978, petitioner purchased a 44-unit apartment building known as Imperial Crown Manor (hereinafter "ICM") for $1,375,000. The building is located in Seattle, and the structure's first use commenced with petitioner as an apartment house. On his 1978 1040 return, petitioner deducted depreciation on ICM of $20,650 for the last two and one-half months of 1978. This total depreciation deduction represented depreciation of 46 components with useful lives ranging from 5 to 40 years. Two of the 46 components were depreciated under the 200 percent declining balance method. Petitioner depreciated the remaining 44 components under the straight-line method. On his 1979 1040 return, petitioner utilized the same method and deducted depreciation of $111,396 on ICM. [4]
*175 In his notices of deficiency concerning petitioner's 1978 and 1979 taxable years, respondent disallowed $5,501 of depreciation for 1978 and $51,027 of depreciation for 1979. [5] Respondent redetermined the depreciable basis of ICM and the useful lives of some components. Respondent did not adjust or change the method of depreciation utilized by petitioner on his 1978 and 1979 1040 returns. The parties have settled the useful life issue. [6]
*176 Petitioner did not file Form 1040X for either taxable years 1978 or 1979. However, subsequent to these cases being docketed and by respective Amendments to Petition dated October 30, 1984, petitioner sought to change retroactively from the straight-line method to the declining balance method with respect to the 44 ICM components. Petitioner has neither sought nor secured respondent's approval to change his method of depreciation. OPINION The sole issue before this Court is whether petitioner may retroactively change from the straight-line method of depreciation to the declining balance method without obtaining respondent's consent. Respondent asserts that, as petitioner's adoption of the straight-line method of depreciation was an acceptable method of depreciation as to the 44 components and as petitioner neither sought nor secured respondent's consent to change his method of depreciation, petitioner may not retroactively change the method of depreciation used in computing the depreciation deduction of components claimed on his original Federal income tax returns. In contrast, petitioner contends that, as respondent adjusted his depreciation with no explanation given, respondent *177 adjusted or modified his depreciation figures in total. As a result, petitioner reasons that he is entitled to recompute the reported straight-line components under the declining balance method. Section 167(a) allows as a deduction for depreciation a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business or held for the production of income. Under section 1.167(b)-O(c), Income Tax Regs., any method of depreciation that results in a reasonable allowance may be selected for each item, but such method "must thereafter be applied consistently to that particular item." With certain exceptions not relevant to the present case, section 1.167(e)-1, Income Tax Regs., specifically provides in pertinent part that: Any change in the method of computing the depreciation allowances with respect to a particular account * * * is a change in method of accounting, and such a change will be permitted only with the consent of the Commissioner, *178 * * * Any request for a change in method of depreciation shall be made in accordance with section 446 and the regulations thereunder * * * Accordingly, once a taxpayer elects an acceptable method of depreciation, he may in general change that method only with the consent of respondent. [7]Sec. 1.167(e)-1(a), Income Tax Regs.; sec. 1.446-1(e)(2), Income Tax Regs.; Foley v. Commissioner,56 T.C. 765, 770 (1971); Mitchell v. Commissioner,42 T.C. 953, 968 (1964). Section 1.446-1(e)(3), Income Tax Regs., provides that in order to secure respondent's consent for a change in method of accounting, Form 3115 must be filed with respondent within 180 days after the beginning of the taxable year in which it is desired *179 to change methods. Respondent has set forth taxpayer compliance requirements in Rev. Proc. 74-11, 1974-1 C.B. 421. Respondent's refusal to consent to a change of method is ordinarily within his administrative discretion, Brown v. Helvering,291 U.S. 193, 204 (1934), and is not to be disturbed unless respondent's refusal to consent was arbitrarily withheld. Casey v. Commissioner,38 T.C. 357, 386-387 (1962). It is clear under the Court's interpretation of the law that the determination by respondent of a new useful life does not give petitioner the right to change retroactively his method of computing depreciation where the consent of respondent was not obtained or arbitrarily withheld. Casey v. Commissioner,supra.[8] Petitioner has utilized the straight-line method on his 1978 and 1979 original tax returns. This is a permissible method. Sec. 167(b)(1). [9] A change from the straight-line method to the declining balance method is a change in method of accounting. In order to accomplish this change, petitioner was required to secure respondent's consent. Petitioner has not established, or even contended, that *180 he attempted to obtain respondent's consent to change depreciation methods. Moreover, upon a careful examination of the *181 record, we fail to find any abuse of discretion or any action on respondent's part which would require or allow us to give petitioner the right to change retroactively his method of computing depreciation. While petitioner argues that the absence of an explanation for the disallowance of his 1978 depreciation should allow him to change retroactively his depreciation method, we cannot agree. Section 6212(a) provides respondent with the statutory authority to send notices of deficiency. No particular form is required for a statutory notice of deficiency. The requirements of section 6212(a) are met if the notice of deficiency sets forth the amount of the deficiency and the taxable year involved. Scar v. Commissioner,81 T.C. 855, 860-861 (1983). The statutory notice need not contain any particulars or explanations as to how the deficiencies were determined. Scar v. Commissioner,supra at 861. See also Abatti v. Commissioner,644 F.2d 1385, 1389-1390 (9th Cir. 1981), revg. on other grounds a Memorandum Opinion of this Court. Although *182 respondent's statutory notice only states the amount of the depreciation adjustment in the 1978 taxable year, we are satisfied that respondent's deficiency notice meets the standards set forth above. Consequently, we reject petitioner's argument. On the basis of the record, we hold that, having failed to seek and obtain respondent's consent, petitioner may not change to the declining balance method. ICM's depreciation for taxable years 1978 and 1979 shall be the straight-line amounts stipulated by the parties as $19,521 and $83,798, respectively. Accordingly, we sustain respondent's determination in light of the concessions and stipulations made. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. In addition to the deficiencies and additions to tax set forth in the respective notices of deficiency, respondent, in his answers filed in each of these cases, seeks the imposition of the additions to tax pursuant to sec. 6653(a) for the taxable years 1976, 1977, and 1978 in the respective amounts of $164.00, $2,330.01, and $3,203.90 and an addition to tax pursuant to section 6653(b)↩ for the taxable year 1979 in the amount of $82,053.50.
3. On January 24, 1984, respondent moved to consolidate docket Nos. 4544-82 and 20143-83 pursuant to Rule 141(a). On January 25, 1984, we granted respondent's motion to consolidate. Docket No. 4544-82 concerns petitioner's 1977 and 1978 Forms 1040. Docket No. 20143-83 concerns petitioner's 1979 Form 1040. In his notice of deficiency dated April 14, 1983, respondent contends that a deficiency in tax exists for the taxable year 1976 because, due to adjustments in taxable years 1978 and 1979, a net operating loss carryback from 1979 and an investment tax credit carryback from 1978 are unavailable. The parties have stipulated that all issues have been settled on the basis and in the amounts set forth in Stipulation Settlement Computation (Exhibit 43-AQ attached to the Stipulation of Facts) with the exception of the amount of allowable depreciation with respect to Imperial Crown Manor in taxable years 1978 and 1979. Several computations await the resolution of this issue and, as a result, a Rule 155 computation will be necessary in this case.↩
4. In addition to the original 46 components which petitioner depreciated on his 1978 return, the $111,396 deduction included an additional item which represented $2,428 worth of improvements to the building for a straight-line depreciation deduction in 1979 of $243.↩
5. On Exhibit G-1 of respondent's notice of deficiency dated December 30, 1981, respondent disallowed $5,501 of depreciation on ICM for taxable year 1978. Next to the depreciation adjustment, respondent added a notation "Exhibit G-2". On "Exhibit G-2", respondent allowed component depreciation of $13,149 "per attached schedule." However, the parties have stipulated that no such "attached schedule" was included in the deficiency notice. There was no indication of how respondent adjusted petitioner's depreciation figure. On respondent's notice of deficiency dated April 14, 1983, which concerns the taxable years 1976 and 1979, respondent disallowed depreciation on ICM in the amount of $51,027. Respondent explained that he changed both the depreciable basis of ICM and the useful life of the building, furniture, and fixtures in Exhibit B attached to said notice of deficiency. On Exhibit B, the computations were included; however the components were not individually analyzed but grouped according to category, e.g., "building components", "roof", etc. ↩
6. The parties have agreed to the following stipulations: First, if the Court determines that ICM should be depreciated on the straight-line method, the allowable depreciation computed in Exhibit 54-BB, attached to the Stipulation of Facts, is: 1978
1979
$19,521
$83,798
Second, if the Court determines that ICM should be depreciated on the 150 percent declining balance method, the allowable depreciation computed in Exhibit 55-BC, attached to the Stipulation of Facts, is: 1978
1979
$26,517
$113,737
Finally, if the Court determines that ICM should be depreciated on the 200 percent double declining balance method, the allowable depreciation computed in Exhibit 56-BD, attached to the Stipulation of Facts, is: 1978
1979
$33,264 *
$145,259
* Both parties acknowledge in their briefs that the stipulated amount for 1978 is incorrect and have agreed to the $33,264 amount as computed in Exhibit 56-BD.↩
7. Sec. 167(e)-1(b), Income Tax Regs., permits taxpayers to change from the declining balance method to the straight-line method at any time during the useful life of the property without the consent of respondent. See also secs. 1.167(e)-1(c) and 1.167(e)-1(d)↩.
8. See also Cristo v. Commissioner,T.C. Memo. 1982-514↩. 9. In this respect, we distinguish petitioner's sole cited case, Silver Queen Motel v. Commissioner,55 T.C. 1101 (1971). In Silver Queen, the taxpayer initially elected an improper, unavailable depreciation method. Here, petitioner has elected the straight-line method with respect to the 44 components on his 1978 and 1979 original tax returns. This is a permissible method. Moreover, in Silver Queen, the Court recognized that once a taxpayer selects an appropriate method of depreciation, he may only change that method with the consent of respondent. Silver Queen Motel v. Commissioner,55 T.C. at 1105. See also Wildman v. Commissioner,78 T.C. 943, 952 (1982). As a result, the Silver Queen opinion is distinguishable from the facts in the case before us and, in fact, upholds the result we reach. See also Southern Pacific Transportation Co. v. Commissioner,75 T.C. 497, 681-682↩ and n. 208 (1980).