78 F.3d 584
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Shirley McGREW, Plaintiff-Appellant,
v.
ZARING HOMES, INC., Defendant-Appellee.
 No. 95-5017.
 United States Court of Appeals, Sixth Circuit.
 March 4, 1996.
 
 Before: JONES, NORRIS, and MOORE, Circuit Judges.
 MEMORANDUM OPINION
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Plaintiff, Shirley McGrew, appeals from orders of the district court granting summary judgment to defendant, Zaring Homes, Inc., and denying her motion for reconsideration. In order to make clear our reasons for affirming the orders of the district court, it is necessary that we detail some of the proceedings below.
 
 
 2
 Defendant filed a motion to dismiss arguing that "plaintiff had no legal rights in the house for the destruction of which she has sued defendant." It also filed a supporting affidavit from an officer of the corporation stating that its deed to the property contained no exception for an ownership interest of plaintiff; that prior to the property's purchase defendant was unaware that plaintiff claimed any ownership rights in the house; that the house was dilapidated; that plaintiff informed defendant of her claim after the closing; that she showed him a letter dated almost two years earlier, signed by an officer of a construction company, giving her permission to remove the house; that he advised plaintiff that while he did not recognize this letter as granting her any rights in the house, he would allow her one week to remove it; that the removal deadline was eventually extended; and that the house was not removed by that date.
 
 
 3
 In response to the motion, plaintiff filed an affidavit in which she acknowledged that the deed conveying title to defendant contained no exceptions and agreed that she visited with defendant's officer after the closing had taken place to advise him of her claim. She said that the house was not dilapidated and in support of that statement listed work she had performed on the house. She went on to say that the house had been placed on moving steel prior to the removal deadline and that another official of defendant corporation told her real estate agent that, while the original deadline had passed, she could still move the house but that defendant would like it done as soon as possible. Plaintiff also acknowledged having received a letter from defendant informing her of the new deadline, to which she had not responded.
 
 
 4
 Plaintiff did not advise the district court that she could not present by affidavit facts essential to justify her opposition to defendant's motion, nor did she request a continuance for discovery purposes as authorized by Fed. R. Civ. P. 56(f).
 
 
 5
 On September 28, 1994, the district court noted that both parties had submitted evidence and that, pursuant to Fed. R. Civ. P. 12(b), it would consider the motion to dismiss as a motion for summary judgment. In light of the affidavits, the court noted that it was undisputed that defendant had no knowledge of any purported agreement for moving the house when it purchased the property and recorded the deed, and therefore concluded that defendant "took the entire property, including the house, free and clear of any interest that plaintiff might have had in the house." However, the district court found that defendant had made a conditional gift of the house to plaintiff but that this gift failed when she did not remove the house by the date specified. Accordingly, defendant was granted summary judgment.
 
 
 6
 Plaintiff then filed a motion to reconsider, contending that defendant did have knowledge of plaintiff's ownership of the house, and that the house "was personalty and was not real estate." The motion was supported by a second affidavit from plaintiff. She also objects to the fact that she did not receive notice of the court's intention to convert the motion to dismiss to one for summary judgment.
 
 
 7
 The district court denied the motion for reconsideration.
 
 
 8
 On appeal, plaintiff renews her argument that notice of conversion was required. On this point, we affirm the district court for the reasons stated in its Memorandum filed December 8, 1994.
 
 
 9
 We also agree with the reasoning employed by the district court in its Memorandum filed September 28, 1994, which states the basis for its granting summary judgment to defendant, in view of the record before the court at that time.
 
 
 10
 On appeal, plaintiff argues that summary judgment was inappropriate because there existed genuine issues of material fact concerning whether defendant had "knowledge or notice of McGrew's ownership interest in the house." The problem with this position is that she raised this argument and supported it with an affidavit for the first time as part of her motion for reconsideration. There was no contention that the facts recited in this second affidavit were not known to plaintiff at the time she submitted her original affidavit. Indeed, the facts recited appear to have been within plaintiff's personal knowledge, and the affidavit simply attempts to introduce facts and arguments that were missing in her original submissions.
 
 
 11
 The district court was not required to give her a second "bite at the apple" and grant the motion for reconsideration.
 
 
 12
 Having considered the other issues raised by plaintiff, we find them to be without merit. For the reasons stated, then, the judgment of the district court is affirmed.
 
 
 13
 ---------------
 
 
 
 1 These cases were consolidated for purposes of trial, briefing, and opinion, and will hereinafter be referred to as the instant case.
 2 Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.
 3 The instant case involves several issues, some of which have been settled. The issues remaining for decision involve matters falling into four reasonably distinct categories, which the parties have denominated as the tax accounting issues, the MACRS depreciation issue, the HealthTrust issue, and the captive insurance or Parthenon Insurance Co. issues. Issues involved in the first three categories were presented at a special trial session, and the captive insurance issues were severed for trial purposes and were presented at a subsequent special trial session. Separate briefs of the parties were filed for each of the distinct categories of issues. The instant opinion involves one of the tax accounting issues. The other issues remaining for decision will be addressed in one or more separate opinions subsequently to be released.
 4 During 1989, HCA became a privately held corporation and remained so until 1992, when it again went public and changed its name to HCA-Hospital Corp. of America. On Feb. 10, 1994, the corporation was merged with and into Galen Healthcare, Inc., a subsidiary of Columbia Healthcare Corp. of Louisville, Kentucky, and such subsidiary changed its name to HCA-Hospital Corp. of America. On that same date, the parent changed its name to Columbia/HCA Healthcare Corporation.
 5 Hereinafter, we sometimes will use the term "medical supply" to refer to a medical supply or pharmaceutical.
 6 The parties have stipulated that our holding relating to the change in method of accounting adjustments for petitioners' hospitals shall also apply to the change in method of accounting adjustments proposed for petitioners' medically related non-hospital businesses.
 7 During the years involved, petitioners received reimbursements from Medicare equal to 35 percent to 43 percent of the total operating revenues reported on the Forms 10-K filed with the Securities and Exchange Commission (SEC).
 8 When Medicare is the third-party payer, hospitals can collect only the "Medicare co-payments" from patients. Should the total payments from Medicare and the patient not equal the total amount billed to the patient, the hospital is not allowed to collect the difference from the patient.
 9 For example, the central supply center would be credited or charged with all direct revenues and expenses incurred in preparing and issuing medical and surgical supplies and other equipment to patients. Appropriate subaccounts would be established to accumulate the expenses of the center under classifications such as salaries and wages, professional fees, supplies, etc.
 10 A chart of accounts is a listing of account titles, with numerical symbols, employed in the compilation of accounting data concerning the assets, liabilities, capital, revenue, and expenses of an enterprise. American Hospital Association, Chart of Accounts for Hospitals 25 (1966 ed.).
 11 Sec. 448, which was added to the Code by sec. 801 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2345, wherein Congress required certain corporations, including hospitals, to change prospectively beginning in 1987 to an overall accrual method, does not apply to the accounting issue under discussion in the instant opinion.
 12 Respondent objects to the admission of evidence relating to consideration of the proposed adjustments for the years ended 1972 and 1973 by the Nashville Appeals Office on the ground that the discussions with the Appeals officers were settlement negotiations and, thus, evidence relating to such matters is inadmissible pursuant to Fed. R. Evid. 408, which generally renders inadmissible evidence of compromises and offers to compromise. We have held in a prior opinion in the instant case that evidence relating to the resolution of such matters is not excludable under Fed. R. Evid. 408 because the evidence was not presented to show the validity or invalidity of petitioners' claim that the hybrid method clearly reflects income. Hospital Corp. of America v. Commissioner, T.C. Memo. 1994-100; see also Wentz v. Commissioner, 105 T.C. 1, 5-7 (1995).
 13 HCA's Chart of Accounts defines bad debts as "accounts which are deemed uncollectible from the patient or any third party due to the patient's unwillingness or inability to pay."
 14 See Hospital Corp. of America v. Commissioner, 81 T.C. 520 (1983).
 15 The number of hospitals owned by petitioners reporting for Federal income tax purposes on an accrual method and the hybrid method for each of the years ended 1979 through 1986 were:
 1979 1980 1981 1982 1983 1984 1985 1986
 ---- ---- ---- ---- ---- ---- ---- ----
Accrual 13 14 16 17 15 15 16 15
Hybrid 76 87 155 170 174 183 218 228
 16 Sec. 446 provides in pertinent part as follows:
 SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.
 (a) General Rule.--Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.
 (b) Exceptions.--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.
 (c) Permissible Methods.--Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting--
 (1) the cash receipts and disbursements method;
 (2) an accrual method;
 (3) any other method permitted by this chapter; or
 (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.
 (d) Taxpayer Engaged in More Than One Business.--A taxpayer engaged in more than one trade or business may, in computing taxable income, use a different method of accounting for each trade or business.
 (e) Requirement Respecting Change of Accounting Method.--Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary.
 17 To determine whether an accounting method clearly reflects income, the Court of Appeals for the Sixth Circuit, to which an appeal in the instant case would lie absent stipulation to the contrary, follows the standard enunciated in Caldwell v. Commissioner, 202 F.2d 112, 115 (2d Cir. 1953), that "income should be reflected with as much accuracy as standard methods of accounting practice permit." Asphalt Prods. Co. v. Commissioner, 796 F.2d 843, 849 (6th Cir. 1986), affg. in part and revg. in part Akers v. Commissioner, T.C. Memo. 1984-208, revd. per curiam on another issue 482 U.S. 117 (1987).
 18 For years after 1984, sec. 461(h) also requires the occurrence of economic performance with respect to a liability.
 19 Sec. 1.446-1(c)(2), Income Tax Regs., provides as follows:
 (2) Special rules. (i) In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph.
 (ii) No method of accounting will be regarded as clearly reflecting income unless all items of gross profit and deductions are treated with consistency from year to year. The Commissioner may authorize a taxpayer to adopt or change to a method of accounting permitted by this chapter although the method is not specifically described in the regulations in this part if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. Further, the Commissioner may authorize a taxpayer to continue the use of a method of accounting consistently used by the taxpayer, even though not specifically authorized by the regulations in this part, if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. See section 446(a) and paragraph (a) of this section, which require that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books, and section 446(e) and paragraph (e) of this section, which require the prior approval of the Commissioner in the case of changes in accounting method.
 20 As noted supra note 11, beginning in 1987, petitioners are required by sec. 448 to use an overall accrual method.
 21 Although petitioners contend in their briefs that the cash method is an appropriate method of accounting for the hospitals, they do not assert a claim that tax for each of the years ended 1981 through 1986 should be recomputed under the cash method, and they concede that the hybrid method of accounting clearly reflects their income for those years. Accordingly, we deem petitioners' failure to assert a claim for recomputation of tax under the cash method of accounting as a concession that income should be reported on the hybrid method of accounting for the years ended 1981 through 1986.
 22 Respondent argues that the change of accounting method issue is in reality a change from the cash method to the accrual method. Respondent, however, does not seek to hold petitioners to the cash method of accounting. Rather, respondent seeks to impose a different method. Under such circumstances, the consent of the Commissioner under sec. 446(e), which requires the Commissioner's prior consent to a change of method of accounting for computing income, generally is not required. See Convergent Technologies, Inc. v. Commissioner, T.C. Memo. 1995-320 ("When * * * [the Commissioner] does not seek to hold a taxpayer to a previously adopted method of accounting but rather seeks to impose another method in place of the one utilized by the taxpayer, the consent of * * * [the Commissioner] under section 446(e) is generally not required" (citing Silver Queen Motel v. Commissioner, 55 T.C. 1101 (1971) and Foley v. Commissioner, 56 T.C. 765 (1971))).
 23 Sec. 1.471-1, Income Tax Regs., provides in part as follows:
 § 1.471-1 Need for inventories.
 In order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which will physically become a part of merchandise intended for sale, in which class fall containers, such as kegs, bottles, and cases, whether returnable or not, if title thereto will pass to the purchaser of the product to be sold therein. Merchandise should be included in the inventory only if title thereto is vested in the taxpayer. Accordingly, the seller should include in his inventory goods under contract for sale but not yet segregated and applied to the contract and goods out upon consignment, but should exclude from inventory goods sold (including containers), title to which has passed to the purchaser. A purchaser should include in inventory merchandise purchased (including containers), title to which has passed to him, although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery, transfer of title to which has not yet been effected.
 24 Sec. 1.446-1(c)(1)(iv), Income Tax Regs., provides in pertinent part as follows:
 Permissible methods.--(1) In general. Subject to the provisions of paragraphs (a) and (b) of this section, a taxpayer may compute his taxable income under any of the following methods of accounting:
 * * *
 (iv) Combinations of the foregoing methods. (a) In accordance with the following rules, any combination of the foregoing methods of accounting will be permitted in connection with a trade or business if such combination clearly reflects income and is consistently used. Where a combination of methods of accounting includes any special methods, such as those referred to in subdivision (iii) of this subparagraph, the taxpayer must comply with the requirements relating to such special methods. A taxpayer using an accrual method of accounting with respect to purchases and sales may use the cash method in computing all other items of income and expense. However, a taxpayer who uses the cash method of accounting in computing gross income from his trade or business shall use the cash method in computing expenses of such trade or business. Similarly, a taxpayer who uses an accrual method of accounting in computing business expenses shall use an accrual method in computing items affecting gross income from his trade or business.
 (b) A taxpayer using one method of accounting in computing items of income and deductions of his trade or business may compute other items of income and deductions not connected with his trade or business under a different method of accounting. [ Emphasis supplied.]
 25 In Sullivan v. Commissioner, T.C. Memo. 1963-264, the taxpayer, a subcontractor to general contractors on building construction jobs who also did some manufacturing of component parts, changed his method of accounting from the cash method to a modified accrual method whereby he accounted for purchases and sales on the accrual method and all other items of income and expense on the cash method. We noted that the Commissioner's regulations explicitly sanction such a hybrid method. Under such circumstances, we held that the taxpayer could not accrue as a legal and auditing expense an auditing fee incurred during the tax year for reconstructing his accounting records and paid during a later tax year, but that the taxpayer would have to account for and deduct such auditing expense on the cash method; i.e., the method he used for all his expenses other than purchases.