289 F.2d 602
 Joseph HORNBERGER, Jr., and wife Rose Hornberger, Estate of Robert E. Hornberger, Deceased, Dorothy A. Hornberger, Independent Executrix, and Dorothy A. Hornberger, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 18692.
 United States Court of Appeals Fifth Circuit.
 May 15, 1961.
 
 Clarence E. Kendall, William O. Taylor, Cecil N. Cook, Austin C. Wilson, Houston, Tex., Royal J. Voegeli, Washington, D. C., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., Butler, Binion, Rice & Cook, Houston, Tex., of counsel, for petitioners.
 Harold M. Seidel, Meyer Rothwacks, Lee A. Jackson, Dept. of Justice, Washington, D. C., Abbott M. Sellers, Act. Asst. Atty. Gen., Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Hart H. Spiegel, Chief Counsel, I.R.S., John M. Morawski, Sp. Atty., I.R.S., Washington, D. C., for respondent.
 Before TUTTLE, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.
 TUTTLE, Chief Judge.
 
 
 1
 This is a petition to review a decision of the Tax Court of the United States denying the petitioners the benefits of the installment sales provisions of Section 44 of the Internal Revenue Code of 1939.[1] The facts were all stipulated and found by the Tax Court. As so found they are:
 
 
 2
 Joseph and Robert Hornberger, hereafter called petitioners, are brothers.
 
 
 3
 By gifts from their father and uncle each of them acquired an undivided one-half interest in land hereinafter called the "Flanders Property." At all times material to this proceeding each of the petitioners owned his respective one-half interest in the Flanders property for more than six months and each of the petitioners' basis in his interest in said property was $40 per acre, or a total of $21,992 for his undivided one-half interest.
 
 
 4
 On November 18, 1953, petitioners sold their interest in the Flanders property to Hornberger Brothers Properties, Inc., a corporation organized under the laws of the State of Texas of which each of the petitioners owned 37½% of the capital stock, or a total of 75% thereof. The total purchase price to the corporation of the Flanders property was $1,099,600, being $1,000 an acre for 1,099.6 acres. Of the purchase price $7,500 was paid in cash and each of the petitioners received $3,750 as his one-half thereof. The remaining portion of the purchase price was evidenced by the two identical 3% interest bearing promissory notes, each in the principal amount of $546,050. One of such notes was payable to Joseph Hornberger, Jr., and the other was payable to Robert E. Hornberger. Each note was payable in installments on or before 13 years from date. The fair market value of each note was approximately its face value. No payments were made on either note during the year 1953 and both of said notes are now only partially repaid.
 
 
 5
 Prior to the sale of the Flanders property to the corporation, petitioners consulted with counsel as to whether income tax could be deferred, with respect to that part of the sales price represented by the corporation's notes, until such time as payments were made on such notes. Counsel advised petitioners that the gain from the sale could be reported on the installment basis as provided in Section 44(b) of the Internal Revenue Code of 1939. Based upon such advice, petitioners made the sale of Flanders property to the corporation. Petitioner Joseph Hornberger and wife employed a firm of certified public accountants to prepare their tax return for the year 1953 and such firm was directed to treat the gain on sale of Joseph Hornberger, Jr.'s interest in the Flanders property on the installment basis. Due to an error by the accounting firm, their return did not comply with rules set forth in the Respondent's Regulations for electing the installment method of reporting gain from the sale of realty. Petitioner Robert E. Hornberger discussed with his brother, Joseph, the manner in which the sale had been treated by the accountants in the preparation of latter's return and, based on such treatment by the accountants, petitioner Robert E. Hornberger and wife also filed their return in the same manner.
 
 
 6
 Although the memorandum opinion of the Tax Court did not mention it, the critical fact touching on the failure to "comply with the rules set forth in Respondent's Regulations" is that the income tax returns of neither brother for 1953 reported the sale at all; but Joseph, whose returns were handled by the accounting firm referred to, did file an amended return prior to the filing date for the 1954 return, reporting the sales as an installment sale. The government does not press the claim that the two brothers should be treated differently.
 
 
 7
 The issue presented on this record is whether in order to avail himself of the installment sales provisions of the 1939 Code the taxpayer must, without fail, and regardless of good faith and in complete absence of negligence on his part, take the affirmative step of claiming the benefit of the section in his original return filed for the year of the sale. We conclude that the statute has no such requirement and none can be validly imposed by the Commissioner.
 
 
 8
 It may be helpful to point out two situations that are not involved in this court. We are not dealing with a statute which in express terms requires an election by the taxpayer at a certain time or in a certain manner, or that in fact even mentions an "election" at all. Thus, such cases as Louis Pizitz Dry Goods Co. v. Deal, 5 Cir., 208 F.2d 724, and R. H. Macy & Co. v. United States, 2 Cir., 255 F.2d 884,[2] cited by the respondent here, are not persuasive. We are not dealing with a case where a taxpayer has made an election by reporting the sale on a deferred payment basis and subsequently seeks to change his position, as was the situation in Pacific National Company v. Welch, 304 U.S. 191, 58 S.Ct. 857, 82 L. Ed. 1282, and in Jacobs v. Commissioner, 9 Cir., 224 F.2d 412, strongly relied on by the respondent here.
 
 
 9
 It is, of course, necessary for the taxpayer to report his income for tax purposes. Normally, this obligation is met by taxpayers who report all transactions that result in taxable income. To the extent that one fails to do this he is immediately faced with the obligation of accounting for such failure. If due to negligence or fraud moderate to heavy sanctions are imposed. If resulting from honest error, as here, all that is required is that the omission be rectified, if not voluntarily by the taxpayer, then upon deficiency notice from the Commissioner. Here the government seeks to invoke a heavy sanction in the case of a non-negligent good faith omission that the statute does not expressly authorize. Nor does the regulation promulgated by the Commissioner under authority of the statute authorize it. The regulations, so far as here pertinent, provided only as follows:
 
 
 10
 "(a) * * * the vendor may return as income from such transactions in any taxable year that proportion of the installment payments actually received in that year which the total profit realized when the property is paid for bears to the total contract price." U.S. Treasury Regs. 118 § 39.44-3(a).
 
 
 11
 Neither party cites any case precisely in point on the facts here in issue. However, we think there is no distinction in principle between the two cases decided by the Court of Appeals for the Sixth Circuit, and the case of the Hornberger brothers. In United States v. Eversman, 6 Cir., 133 F.2d 261, the taxapayer reported a sale in her 1931 return which produced $40,000 cash to her which she considered nontaxable. Her return disclosed the details of a sale and a reacquisition by her of the property. She did not then claim the sale was an installment sale, but when she subsequently responded to a deficiency notice she claimed the benefits of Section 44(d) of the Internal Revenue Act of 1928, treating of gain or loss upon disposition of installment obligations. The United States argued that Mrs. Eversman could not claim this treatment because she had not elected in her return to report the sale as an installment sale. The Court answered this contention by saying:
 
 
 12
 "We find no force in the argument that Mrs. Eversman was required to make an express election in her tax return, in order to receive the benefits available to her under Sections 44(b) and 44(d) of the statute. The government would have us read into the statute requirements not found there. No provision to the effect that the taxpayer must have made an express election in a previous taxable year is found in the statute. While Mrs. Eversman, in her 1931 income tax return, did not expressly state her election to report under Section 44(b) the $20,000 received from the property sale during that year, she did file, with her return, a detailed report of the sale and repossession of the Wagner property. The course pursued by her evidenced a manifest belief that the transaction which she had described entailed no additional tax liability. The Treasury Department was put in possession of all the relevant facts. Her failure to adopt fruitless ritualistic measures should not foreclose the allowance to her of all lawful benefits under the statute." 133 F.2d 261, 266.
 
 
 13
 It is to be noted that the disclosure of all the facts by the taxpayer has no bearing on the making of an election.
 
 
 14
 So, too, in the later case of Scales v. C. I. R., 6 Cir., 211 F.2d 133, the taxpayer reported income from a sale as rent, and thus made no "election" to treat what was really a sale as an installment sale. The Court, in a short per curiam opinion reversed the Tax Court decision based on the failure of the taxpayer to make an election, quoting its earlier Eversman case with approval.
 
 
 15
 We think it is worthy of note that the Tax Court itself, subsequent to deciding the Hornberger case now before us has held in Bayley v. Commissioner, 35 T.C. No. 37, that the failure of the taxpayer to claim the benefits of Section 44(b) on his return is not fatal to its allowance where the taxpayer reported the facts touching on the sale of his house, but reported no taxable gain. The Court there said, as we say here:
 
 
 16
 "* * * It is to be observed that neither the statute nor the regulations in force and effect at the time when Federal income tax returns for the calendar year 1954 were due to be filed, specifically required that a taxpayer must make his election on his return in order to have the benefit of the installment method for computing the gain on a sale which qualified as an installment sale."
 
 
 17
 The fact that the Tax Court decided differently in the Bayley case than here because the facts were disclosed in the return evidences a concept that the failure to give the facts touching on the sale (even though an excusable omission, as here conceded) somehow should be penalized. We do not think the law recognizes this concept. If a failure to report an income producing sale is excusable and may be corrected without penalty for all other purposes of the income tax laws, we perceive no reason why, if reported or claimed as an installment sale while the year of sale is still open to adjustment under the statute and if it has not been treated in an inconsistent manner, this should not entitle the taxpayer to installment treatment of the sale.
 
 
 18
 It may appropriately be observed that whenever Congress has intended to provide for an "election" of treatment for tax purposes it has had no difficulty in expressing such intent. In many cases Congress has enacted separate sections dealing with the time and manner of making such election. See, as a few of many examples in the 1939 Code, Sections 112(m), 117(k) (1), 400 and 402 in addition to the elaborate provisions of Section 22(d), supra.
 
 
 19
 The decision of the Tax Court was in error and it must be reversed for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 "§ 44. Installment basis
 * * * * * * *
 "(b) Sales of Realty and Casual Sales of Personalty — In the case * * * (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 percentum of the selling price (or, in case the sale or other disposition was in a taxable year beginning prior to January 1, 1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term `Initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made." 26 U.S.C.A. 1954 ed., Sec. 44.
 
 
 [2]
 These cases arose under the provisions of Section 22(d) of the 1939 Code permitting use of the LIFO method of calculating taxes