*Decision will be entered under Rule 50.*

F. E. McGILLICK COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 93658. Filed September 18, 1964.

*Kenneth P. Simon*, for the petitioner.
*Lawrence L. Wilson*, for the respondent.

FISHER, *Judge:* In his notice of deficiency, respondent determined a deficiency in petitioner's Federal income tax for the taxable year ended December 31, 1955, in the amount of $54,164.16 and additions to tax in the amount of $15,883.18 for such year under section 6651(a) of the Internal Revenue Code of 1954.[1]

The deficiency is based upon respondent's determination that petitioner forfeited its right to elect the installment method of reporting sales of real estate in 1955 when it failed to file a timely return for that year.

---

[1] All section references herein are to the Code of 1954, as amended, unless otherwise noted.

Petitioner has conceded liability under section 6651 for additions to tax for 1955 because of its failure to file a timely return for that year. The additions will be applied to the tax as ultimately determined.

FINDINGS OF FACT

Some of the facts have been stipulated and, together with the exhibits attached thereto, are incorporated herein by this reference.

The F. E. McGillick Co. (hereinafter referred to as petitioner) is a corporation organized in 1932 under the laws of the Commonwealth of Pennsylvania, with authorized and issued capital stock of 50 shares. The principal place of business of petitioner during 1955 was 306 North Homewood Avenue, Pittsburgh, Pa. At all times since its organization, petitioner has been engaged in the business of buying and selling real estate, holding real estate for investment, and renting and managing various properties owned by it. Petitioner also owned and operated a motion-picture theater in 1950 and 1951 and received income therefrom.

The Francis Edward McGillick Foundation (hereinafter referred to as the foundation) was created in 1937 as a trust under the laws of Pennsylvania, by F. E. McGillick (hereinafter referred to as McGillick). From at least 1949 the foundation has held 49 shares of the stock of petitioner and McGillick's wife, A. Louise Schultz McGillick, has been the absolute owner of one share of petitioner's stock.

The foundation received no income from 1937 through 1948. Petitioner, by deed dated December 30, 1949, transferred to the foundation income-producing rental properties it had held.

At all times involved herein, including the years 1949 through 1956, McGillick and his wife were the sole trustees of the foundation and constituted the board of directors of petitioner. McGillick was the president of petitioner and the presiding officer of the foundation. His wife was secretary to both petitioner and the foundation.

On March 15, 1951, the foundation made an application in writing to respondent for a ruling exempting the foundation from Federal income taxation as a religious, scientific, literary, or educational organization under the provisions of section 101(6) of the Code of 1939. In the application, the foundation reported information pertaining to the business activities and income of petitioner. It supplied respondent a balance sheet and a profit-and-loss statement of petitioner involving the year 1950. The figures contained in the application reflected that all of the petitioner's income was distributed to the foundation without any reduction for income taxes. The application, however, did not request respondent to determine petitioner exempt from income taxation.

The application was prepared by petitioner's bookkeeper, R. F. McShane, at the direction and under the supervision of McGillick.

On October 3, 1952, respondent advised the foundation, in writing, that it was neither organized nor operated exclusively for purposes coming within the meaning and intent of section 101(6), Code of 1939, and further advised that the foundation would be required to file Federal income tax returns. After receiving said ruling, the foundation's trustees requested a reconsideration of the ruling by letter dated October 16, 1952. The ruling was affirmed on March 17, 1953. Correspondence concerning the ruling continued between the respondent and the foundation until December 29, 1953.

Petitioner filed Federal income tax returns for the years prior to 1950 but did not file income tax returns for the years 1950 through 1954. At no time did petitioner make an application to respondent for a ruling that it was an organization exempt from Federal income taxation, nor did it ever file information returns required of an exempt organization.

For the years 1950 through 1955, McGillick had petitioner's bookkeeper prepare and file, for the foundation, information returns of an organization exempt from tax. McGillick directed that there should be attached to each of the foundation's information returns concurrent information regarding petitioner, consisting of petitioner's balance sheet, statement of profit and loss, and a reconciliation of net income and analysis of surplus. McGillick regarded the attachment of such information as sufficient to satisfy filing requirements of the Federal income tax laws.

In August 1952 respondent began an audit of petitioner for the year 1950. The audit eventually covered the years 1950 through 1954. After respondent denied the foundation's request for tax exemption on October 3, 1952, an agent of respondent informed McGillick that a return for petitioner was required as the foundation had been denied tax-exempt status and that in no case would petitioner, because of the various business activities in which it was engaged, have the right not to file a return.

McGillick disagreed, stating that no return was required to be filed by petitioner, since, he believed, petitioner was exempt from taxation because the foundation owned the petitioner's stock and, as far as McGillick was concerned, the foundation was exempt from taxation. McGillick never referred to any statute, regulation, or court decision as the basis for his claim that petitioner was exempt from Federal taxation.

Respondent determined deficiencies in tax against petitioner for the years 1950, 1951, and 1952 and against the foundation for the years 1949 through 1952. Statutory notices of deficiency involving the foundation's and petitioner's income tax for these years were duly mailed to the foundation and to petitioner. Petitions were filed with

the Tax Court by the foundation and petitioner requesting a redetermination of such deficiencies in income tax.

Prior to the mailing of the statutory notice of deficiency to petitioner for the year 1950, respondent notified petitioner in a 30-day letter that its income was taxable. A protest to said letter was prepared by petitioner in which the only reason given for petitioner's income being exempt from taxation was that the foundation was an organization exempt from taxation and that it owned petitioner's stock.

On February 8, 1954, counsel was engaged by petitioner to represent it in contesting the proposed deficiency. The same counsel was employed by the foundation. Prior to this time McGillick never sought advice with respect to whether the income of petitioner was exempt from taxation.

The proceedings before the Tax Court involving petitioner for the years 1950 through 1952 and the foundation for the years 1949 through 1952 were placed on the Tax Court calendar for March 1956 at Pittsburgh, Pa. During said calendar, the cases were consolidated, a stipulation of facts was filed by counsel for both parties, and the consolidated proceedings were presented as a stipulated case.

In May 1956, petitioner and the foundation employed new counsel to represent them before the Tax Court. New counsel, with the permission of the Tax Court, negotiated a new stipulation of facts which was approved by the parties and submitted to the Court during October 1956.

The opinion of the Tax Court in the above consolidated cases was filed on August 21, 1958. It was held that the foundation was not exempt from taxation under section 101(6), Code of 1939, and also that petitioner was not tax exempt. The opinion is reported at 30 T.C. 1130. Petitioner appealed, but did not appeal that part of the decision determining that the petitioner was not a tax-exempt organization. The opinion of the Court of Appeals for the Third Circuit is reported at 278 F. 2d 643. It holds the foundation to be a tax-exempt organization.

After filing the new stipulation, petitioner's new counsel advised McGillick that petitioner was a taxable entity and would be required to file corporate net income tax returns and pay Federal income taxes. Counsel advised petitioner to prepare and file a corporate net income tax return for the year 1955 and pay the tax listed thereon. Counsel also advised petitioner to report its gain from installment sales under the installment provisions of the Internal Revenue Code.

Counsel encountered difficulty convincing McGillick that a return for petitioner should be filed for the year 1955. Finally, petitioner's bookkeeper prepared petitioner's 1955 income tax return and the return was given to petitioner's counsel on December 17, 1956, but no check for the taxes due accompanied the return. A check was pre-

pared on January 29, 1957, and, along with the return, was delivered to respondent on January 31, 1957.

No request was made by petitioner for extension of time for submitting its 1955 income tax return and no extension of time was given by respondent.

During the year 1955, petitioner sold the following real property:

*Held Other Than as Capital Assets*

| Property | Selling price | Basis | Gain | Amount of sale price received in 1955 | Mortgage received |
|---|---|---|---|---|---|
| Mount Lebanon acreage (5.970 acres) | $100,400 | $7,817.83 | $92,582.17 | $20,000.00 | $80,400.00 |
| Mount Lebanon acreage (2.539 acres) | 40,000 | 3,324.87 | 36,675.13 | 10,000.00 | 30,000.00 |
| Dormont-Mifflin plan (lots 18 and 21) | 2,600 | 514.58 | 2,085.42 | 2,600.00 | |
| Total | 143,000 | 11,657.28 | 131,342.72 | 32,600.00 | |

*Used in Business and Held for More Than 6 Months*

| | | | | | |
|---|---|---|---|---|---|
| House and lot 1110 Blackadore Ave., Pittsburgh, Pa. | $4,000 | $800.00 | $3,200.00 | $304.54 | $3,695.46 |

On its 1955 income tax return, petitioner reported as income on the sale of each of the real properties only that proportion of the sales price actually received in 1955 which the total gain on each property sold bore to the total sales price.

### OPINION

The issue for decision is whether petitioner is entitled to report its gain on the sale of real estate in 1955 on the installment basis under section 453 (a) and (b).[2]

---

[2] SEC. 453. INSTALLMENT METHOD.

(a) DEALERS IN PERSONAL PROPERTY.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—

(1) GENERAL RULE.—Income from—

(A) a sale or other disposition of real property, or

(B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000,

may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).

(2) LIMITATION.—Paragraph (1) shall apply—

(A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—

(i) there are no payments, or

(ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

(B) In the case of a sale or other disposition during a taxable year beginning before January 1, 1954, only if the income was (by reason of section 44(b) of the Internal Revenue Code of 1939) returnable on the basis and in the manner prescribed in section 44(a) of such code.

Section 453 (b) provides that income from a sale or other disposition of real property may, under regulations prescribed by the Secretary, be returned on the installment basis provided in section 453 (a).

Respondent's position is that petitioner, having failed to elect to report its profit on the real estate sales on the installment basis on a timely filed return for the year 1955, forfeited its right to elect the installment basis. Therefore, respondent argues, the entire profit is taxable in 1955, the year of sale. See Rev. Rul. 93, 1953–1 C.B. 82.

The income tax regulations promulgated under section 453 were not adopted until September of 1958. However, section 7807 of the 1954 Code had the effect of keeping in force the regulations promulgated under section 44 of the 1939 Code,[3] until regulations under the 1954 Code were adopted. Section 39.44–3 of Regulations 118, promulgated under the 1939 Code, provided in material part, as follows:

SEC. 39.44–3 *Sale of real property on installment plan.* * * * (1) the vendor may return as income from such transactions in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the property is paid for bears to the total contract price.

It is to be observed that neither the statute nor the regulations in force at the time the 1955 Federal income tax return was due to be filed specifically required an election to be made by petitioner at a certain time or in a certain manner. In fact, there is no mention of an election at all.

Respondent cites the cases of *Sarah Briarly*, 29 B.T.A. 256 (1933); *W. T. Thrift, Sr.*, 15 T.C. 366 (1950); *Cedar Valley Distillery, Inc.*, 16 T.C. 870 (1951); and *W. A. Ireland*, 32 T.C. 994 (1959). While some of these cases contain language which might appear to support respondent's argument, none of them present a situation analogous to that herein involved where a taxpayer elected to use the installment basis in an original (but not timely) return filed for the year of sale. In each of those cases the taxpayer attempted to change his method of accounting to the installment basis. See also *Pacific Nat. Co.* v. *Welch*, 304 U.S. 191 (1938); *Jacobs* v. *Commissioner*, 224 F. 2d 412 (C.A. 9, 1955); and *Peter Mamula*, 41 T.C. 572 (1964). In more recent cases this Court has not adhered to the rule set forth in Rev. Rul. 93, *supra*. See *John F. Bayley*, 35 T.C. 288 (1960); *Jack Farber*, 36 T.C. 1142 (1961), affd. 312 F. 2d 729 (C.A. 2, 1963), certiorari denied 374 U.S. 828 (1963); *Nathan C. Spivey*, 40 T.C. 1051 (1963); and *John P. Reaver*, 42 T.C. 72 (1964).

---

[3] Insofar as they are applicable to the instant case, the provisions of sec. 44 of the Code of 1939, in respect of electing the installment method to report income on sales of real property, were carried over to sec. 453 with no substantial changes. S. Rept. No. 1635, 83d Cong., 2d Sess. (1954); H. Rept. No. 1337, 83d Cong., 2d Sess., A160 (1954).

In *Hornberger, Jr.* v. *Commissioner*, 289 F. 2d 602 (C.A. 5, 1961), reversing a Memorandum Opinion of this Court, a sale of realty, through inadvertence, was not reported on the taxpayer's return for the year of sale. We held that the taxpayer was not entitled to correct the omission and gain the benefit of the installment basis on the ground that the election to use such basis was untimely. The appellate court, in reversing our decision, took the position that the Commissioner, in denying the taxpayer the privilege of using the installment basis, was reading into the statute a requirement for timely election not found there, and was seeking to invoke a heavy sanction not expressly authorized in either the statute or the regulations.

In *John P. Reaver*, *supra*, taxpayers sold real estate and received part of the purchase price in 1958, the year of sale. This part payment was included in taxpayers' gross receipts from their business on their original income tax return for 1958 which was not filed until October 1959. After auditing the taxpayers' returns for 1958 and 1959, the Commissioner determined that the entire gain on the sale of the property was taxable to the taxpayers as a long-term capital gain in 1958. The taxpayers, in August 1961, filed an amended return for 1958, reporting the sale as a capital transaction and electing to report the gain therefrom on the installment method. In determining that the taxpayers were entitled to return the income and profit on the sale of the real estate on the installment basis, we said (p. 80) :

Neither the statute nor the regulations specifically require that the taxpayer must elect to report a casual sale of real estate on the installment method in a timely filed return. As previously noted, the installment sale provisions in both the 1939 Code and section 453(b) of the 1954 Code simply provide that, if the limitations with respect to the payments received during the year of sale are met, the profit on a sale of real property may be returned on the installment basis, under regulations prescribed by the Secretary. The regulations under the 1939 Code, Regs. 118, sec. 39.44–3, provided only that a "vendor may return as income from such transactions in any taxable year that proportion of the installment payments actually received * * *" without mention of the time or method of making an election.

The regulation promulgated in 1958 under section 453 of the 1954 Code, sec. 1.453–8(b)(1) heretofore quoted, does not provide that the election must be made on an original return timely filed, but only that one who elects to report a sale on the installment method must set forth in his return for the year of sale the computation of the gross profit on the sale. This regulation has been found to be reasonable and valid by the Court of Appeals for the Tenth Circuit in *Ackerman* v. *United States*, 318 F. 2d 402 (1963), * * *

The Commissioner has been given rather broad rule-making authority by section 453 and it would seem that if he considered it to be a reasonable and valid requirement under the statute that an affirmative election to use the installment method be made in an original and timely filed return for the year of sale, he would so provide in his regulation. It is interesting to note that paragraph (a) of this same section of the regulations, sec. 1.453–8(a), relating to dealers in personal property, was amended by T.D. 6682, 1963–2 C.B. 197, filed Oct. 15,

1963, to specifically provide that an election by a dealer in personal property to adopt or change to the installment method "must be made on an income tax return for the taxable year of the election, filed on or before the time specified (including extensions thereof) for filing such return." There may be more reason to require a dealer in personal property to make the election in a timely filed return than for taxpayers making casual sales of property, but this indicates that the omission of a similar requirement in the part of the regulation here involved could hardly be due to oversight.

Respondent further argues that if it should be held that a taxpayer who failed to file a timely return may still elect to report sales on the installment basis, the right to make such an election on a late filed return should depend, in some measure, upon the taxpayer showing good cause why such return was not timely filed. Respondent asserts that petitioner has not shown good cause.

The same issue was present in *Baca* v. *Commissioner*, 326 F. 2d 189 (C.A. 5, 1964), reversing 38 T.C. 609 (1962). In that case the taxpayer sold a farm during 1953 but negligently failed to file a 1953 income tax return until March 1957. On the late return the taxpayer reported the sale on the installment basis. We held that, since the taxpayer's income tax return for 1953 was not a timely filed return, taxpayer had forfeited the right to report the profits received from the sale of the farm in 1953 on the installment basis. This holding was reversed on appeal. In concluding that the election to report on the installment basis is not required, under the statute, to be made in a timely filed return for the year in which the sale takes place, the Fifth Circuit, speaking through Chief Judge Tuttle, commented on the rule of the *Hornberger* case as follows (p. 191):

The Commissioner here places great significance upon the fact that in the Hornberger case the omission was non-negligent. Nevertheless, it is just as true that neither the statute nor the regulation authorizes this sanction in the case of a negligent omission, as in the case of a non-negligent omission. We think that the penalty provisions for negligence and for failure to make a timely estimate completely exhaust the power in the Commissioner or the courts to penalize for these omissions. The law does not lightly impose penalties and courts look with disfavor on forfeitures. Other cases favoring the taxpayer's general contention that the election requirements of § 44(b) are not to be applied in a more restrictive fashion than is here decided are * * *. [Cases omitted.] We think, however, that we need go no further than the Hornberger case to find the controlling principle here, that is, that the statute does not authorize the imposition of an added penalty for the late filing of the 1953 tax return in the nature of a forfeiture of the rights of the taxpayer to make an election to treat as an installment sale a sale which in all other respects is subject to such treatment.

From our analysis of the statute, correlative regulations, and cases, we now conclude that the controlling legal principle is as stated in the *Baca* case. To reiterate, that principle is "that the statute does not authorize the imposition of an added penalty for the late filing of [a]

tax return in the nature of a forfeiture of the rights of the taxpayer to make an election to treat as an installment sale a sale which in all other respects is subject to such treatment." Accordingly, we will hereafter follow the principles announced by the Court of Appeals in *Baca*.

In the instant case we have an initial error committed by petitioner. It contended it was exempt from Federal income taxation. When petitioner was advised by counsel that it was not exempt from Federal income taxation, it prepared and filed a late tax return for the year 1955, the only year not previously audited by respondent. This late return reported, at counsel's recommendation, petitioner's 1955 sales of real estate on the installment basis.

Respondent does not contend that petitioner's installment method of reporting real estate sales for 1955 does not comply with the conditions set forth in the regulations. He only asserts the lateness of the return as the reason for disallowing petitioner the right to report the real estate sales on the installment basis.

We, therefore, conclude that the petitioner is entitled to report its gain on the sale of real estate in 1955 on the installment basis.

Reviewed by the Court.

*Decision will be entered under Rule 50.*