JOSEPH H. GIBSON AND GLORIA I. GIBSON, AND ABC, INCORPORATED, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16867-83.          Filed December 16, 1987.

*Robert E. Reed,* for the petitioners.
*Mark E. Rizik,* for the respondent.

PARKER, *Judge:* Respondent determined deficiencies in petitioners' respective individual and corporate Federal income tax as follows:

| Taxpayer | Year | Deficiency |
|---|---|---|
| Joseph H. Gibson and Gloria I. Gibson | 1979 | $10,524.87 |
| | 1980 | 42.00 |
| ABC, Inc. | 1979 | 5,965.62 |
| | 1980 | 172.72 |

After concessions the issues for decision are (1) whether the "binding election" rule of *Pacific National Co. v. Welch,* 304 U.S. 191 (1938), precludes petitioners from electing on their amended returns to use the installment method of section 453[1] to report their respective gains from the sale of certain property; and (2) the proper allocation between the corporate taxpayer and the individual taxpayers of the lump-sum purchase price from that sale. The second issue turns upon who was entitled to the portion of the proceeds attributable to improvements made by the corporate lessee to the individual lessors' realty.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and exhibits attached thereto are incorporated herein by this reference.

Petitioners in this joint case are Joseph H. Gibson and Gloria I. Gibson and ABC, Inc. Petitioners Joseph H. Gibson and Gloria I. Gibson (the Gibsons) are individuals who resided in Detroit, Michigan, at the time the petition was filed. Petitioner ABC, Inc. (ABC or the corporation), was the Gibsons' wholly owned corporation, and at the time the petition was filed had its principal office at the Gibsons' residence in Detroit, Michigan. The Gibsons were the officers of the corporation as well as the sole shareholders. Both the individual petitioners and the corporation filed their tax returns on the calendar year basis and used the cash method of accounting.

On October 10, 1969, the Gibsons purchased the land and building located at 19220-19222 Conant Avenue, Detroit, Michigan, for $18,000. On June 24, 1975, petitioner Joseph H. Gibson purchased the land located at 19228 Conant in Detroit, Michigan, for $5,500. These properties collectively will be referred to herein as the Conant property.

In 1972, ABC was formed to operate a day-care center and nursery school located on the Conant property. Pursuant to

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.

an informal oral agreement, ABC leased the Conant property from the Gibsons. There was no written lease, and the record does not establish the terms of the oral agreement. Between 1972 and 1979, ABC made substantial permanent improvements to the Conant property, such as repairing a wall and a fence, renovating the kitchen, and adding a bathroom.[2] These permanent improvements were designed to bring the property into compliance with local zoning code requirements for a day-care center and nursery school.

On December 23, 1979, the Gibsons executed a land sales contract in ABC's name, selling the Conant property and the day-care center and nursery school business to Casanova Hudson (Hudson).[3] The total purchase price was $175,000, calling for $10,000 down in 1979 and the remaining $165,000 to be paid in installments over a 2-year period ending in December of 1981. The parties agree that the value of the Conant property (including the improvements) at the time of sale was $81,500. The balance of the purchase price ($93,500) is allocable to the intangible assets (goodwill and going-concern value) of the day-care center and nursery school business.[4]

Neither the individual petitioners nor the corporate petitioner reported the sale of the Conant property and day-care and nursery school business, or their receipt of the $10,000 from that sale, on their original 1979 Federal income tax returns. Instead, on their 1980 returns, petitioners reported the sale on the completed or closed-transaction basis, allocating the purchase price between the corporation and the individuals, as follows:

---

[2]It is not entirely clear whether the Gibsons or the corporation paid for the improvements. The record indicates that the mortgage on the Conant property was increased by $6,000 in 1975, the year Mr. Gibson purchased 19228 Conant, and by $62,500 in 1976. The stated purpose of the mortgage loan was construction, which suggests that this may have been the source of funds for the improvements to the Conant property.

[3]While the parties discuss somewhat inconclusively the fact that the land contract was in the name of ABC, we need not address the effect, if any, of such fact. There is no dispute that the sales proceeds must be allocated between the individuals and their corporation, and that the sale occurred in 1979.

[4]See *Williams v. McGowan*, 152 F.2d 570, 572 (2d Cir. 1945); *Solitron Devices, Inc. v. Commissioner*, 80 T.C. 1, 20-22 (1983), affd. without published opinion 744 F.2d 95 (11th Cir. 1984).

|  | Gibsons | ABC | Total |
|---|---|---|---|
| Purchase price | $97,380 | $67,500.00 | [1]$164,880.00 |
| Adjusted basis | 80,000 | [2]34,133.85 | 114,133.85 |
| Net gain (before sec. 1202 deduction) | 17,380 | 33,366.15 | 50,746.15 |

[1]This composite figure was described in the returns as the gross sales price minus sale expenses.

[2]This was described in the corporate return as a cost of $55,129.88, less depreciation of $20,996.03.

The record does not explain why petitioners reported a purchase price that was $10,120 less than the actual purchase price.

Margaret W. DeBusschere (Mrs. DeBusschere) and her husband had for many years operated a bookkeeping, accounting, and tax-preparation business. Mrs. DeBusschere had no specialized training in accounting or tax law, and had learned the business on the job. Mrs. DeBusschere had performed bookkeeping and accounting services for ABC from the time it was formed in 1972, including the preparation of ABC's Federal corporate income tax returns. She had also prepared the corporate returns for another corporation that Mr. Gibson controlled. Mrs. DeBusschere prepared the original 1979 and 1980 returns for both the Gibsons and the corporation.

Mrs. DeBusschere was vaguely aware that petitioners' sale of the Conant property and the day-care center and nursery school business had occurred before the end of 1979. However, Mr. Gibson told her that the purchaser (Hudson) had not taken possession of the property or taken over the business until 1980, and thus, the sale should not be reported until 1980. Mrs. DeBusschere felt that the question was borderline but did as Mr. Gibson told her and reported the sale on petitioners' 1980 returns. Mrs. DeBusschere did not know the terms of the agreement between petitioners and Hudson. She never saw the purchase contract, nor any other documentation in regard to the sale, and the figures she used in reporting the sale on the 1980 individual and corporate returns were figures given to her by Mr. Gibson.[5] Those figures understated the sales price

[5]The testimony of Mr. Gibson and Mrs. DeBusschere was in sharp conflict on the matter of the preparation of the original 1979 and 1980 individual and corporate returns. Based upon

by $10,120 and overstated the basis by some $71,000.

In 1981, Hudson defaulted on the purchase contract, and petitioners successfully sued to regain possession of the Conant property. At the time of the trial, the Gibsons still owned the Conant property (and the improvements) and were trying to sell it; the day-care center and nursery school business had been discontinued; ABC had become inactive, and there was a question as to whether ABC's corporate existence had been terminated.

On June 29, 1982, after respondent had completed his audit of petitioners' 1979 and 1980 taxable years, petitioners filed amended individual and corporate returns for 1979, reporting the sale of the Conant property and the day-care center and nursery school business in that year, and allocating the total purchase price between the individual and corporate taxpayers, as follows:

|  | Gibsons | ABC | Total |
|---|---|---|---|
| Purchase price | $23,961 | $151,039.00 | $175,000.00 |
| Adjusted basis | 10,620 | 26,947.31 | 37,561.31 |
| Net gain (before sec. 1202 deduction) | 13,341 | 124,091.69 | 137,432.69 |

In allocating the total sales price of $175,000 and basis between the individual taxpayers and the corporate taxpayer, these amended returns allocated the land and building to the Gibsons and allocated all of the improvements to the realty, and all of the intangible assets (goodwill and going-concern value) of the business to the corporation. The allocation of the purchase price is still in dispute in this case, but the parties have now agreed on the correct cost, depreciation, and adjusted basis figures.[6] In these amended returns, petitioners sought to elect to report the gain from the sale on the installment method under section 453. The section 453 calculations reported payments in 1979 of $8,100, which petitioners allocated between the Gibsons and

---

the Court's observation of the demeanor of both witnesses and a careful consideration of their testimony as a whole, the Court found Mrs. DeBusschere to be more credible and has generally adopted her version of the events.

[6]Those agreed figures are as follows:

| Petitioner | Cost | Depreciation | Adjusted basis |
|---|---|---|---|
| Joseph H. and Gloria I. Gibson | $23,500.00 | $7,380.00 | $16,120.00 |
| ABC, Inc. | 49,846.69 | 22,899.38 | 26,947.31 |
| Total | 73,346.69 | 30,279.38 | 43,067.31 |

the corporation in accordance with their overall allocation of the purchase price. Mrs. DeBusschere did not prepare these amended returns. The record does not establish that the payments received in 1979 totaled only $8,100, rather than $10,000.

In his two statutory notices to the individual and corporate petitioners, dated March 28, 1983, respondent determined that the sale occurred in 1979. Respondent allocated $81,500 of the purchase price to the Gibsons, reflecting the correct value of the Conant property (including the improvements) at the time of sale. Respondent allocated the remaining $93,500 of the purchase price to ABC for the intangible assets of the day-care and nursery school business. Respondent included all of petitioners' respective gains in 1979, disallowing their use of the installment method claimed in their amended 1979 returns on the ground that petitioners had irrevocably elected on their 1980 returns not to report the sale on the installment method. Respondent's other determinations put at issue in the joint petition have either been resolved by the parties' stipulations or are computational, derivative of our resolution of the two issues for decision.

## OPINION

### I. *Election of Installment Method*

As in effect at the time petitioners sold the Conant property and the day-care and nursery school business in 1979, section 453(b)[7] required taxpayers to affirmatively

---

[7]Sec. 453(b), in pertinent part, provided that:

SEC. 453(b). SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—

    (1) GENERAL RULE.—Income from—

        (A) a sale or other disposition of real property, or

        (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000,

may (under regulations prescribed by the Secretary) be returned on the basis and in the manner prescribed in subsection (a).

    (2) LIMITATION.—Paragraph (1) shall apply only if in the taxable year of the sale or other disposition—

        (A) there are no payments, or

        (B) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price.

Sec. 2(a) of the Installment Sales Revision Act of 1980, Pub. L. 96-471, made extensive changes to sec. 453. These changes insofar as they relate to sales of real property and casual

elect to use the installment method for reporting gains from sales of real property and casual sales of personal property. Neither the statute nor the regulations specifically required a taxpayer to elect the installment method in his original timely filed return. Sec. 1.453-8(b)(1), Income Tax Regs.[8]

---

sales of personal property (new sec. 453) were made applicable to dispositions made after the date of enactment of that act, Oct. 19, 1980, in taxable years ending after that date. Thus, the present case does not involve the election-out provision of new sec. 453(e) under which installment reporting would automatically apply to a qualified sale unless the taxpayer elected not to have the provision apply.

[8]Sec. 1.453-8(b)(1), Income Tax Regs., provides as follows:

(b) *Sales of real property and casual sales of personal property.* (1) A taxpayer who sells or otherwise disposes of real property, or who makes a casual sale or other casual disposition of personal property, and who elects to report the income therefrom on the installment method must set forth in his income tax return (or in a statement attached thereto) for the year of the sale or other disposition the computation of the gross profit on the sale or other disposition under the installment method. In any taxable year in which the taxpayer receives payments attributable to such sale or other disposition, he must also show in his income tax return the computation of the amount of income which is being reported in that year on such sale or other disposition.

The validity of this regulation has been upheld. *Ackerman v. United States,* 318 F.2d 402 (10th Cir. 1963). In that case, the sale occurred in late December of 1958 but the taxpayer received no payment in 1958. The taxpayer did not report the sale on her 1958 return. In 1959, the taxpayer received payments from the sale which she reported on her 1959 return. In that 1959 return, she also sought for the first time to elect the installment method of reporting the gain from the property. The 10th Circuit, relying on the above regulation, held that the failure to report the sale, in the year of sale, disqualified her from electing the installment method. One court, citing Technical Information Release No. 756, Aug. 24, 1965, has stated in passing that the Internal Revenue Service "no longer follows *Ackerman.*" See *Maid-Rite Steak Co. v. United States,* 643 F. Supp. 1162, 1167 (M.D. Pa. 1986). That statement may be misleading. That Technical Information Release, later published as Rev. Rul. 65-297, 1965-2 C.B. 152, made an exception to the *Ackerman* holding, saying the Service will recognize as valid, elections made "where the sale took place in a taxable year ended before December 18, 1958 [the effective date of the above regulation], if the election was made in the return for the year the first payment from the sale was received." The other two situations that the Service stated it would accept as valid elections were not inconsistent with nor involved in *Ackerman,* but served to clear up some uncertainty in the case law about making an election on an amended return or on a late-filed original return, as follows:

2. Those cases where election of the installment method was made on an amended return for the year of sale not barred by the statute of limitations or the operation of any other law or rule of law, *if the facts indicate no election inconsistent with the installment election had been made with respect to the sale.*

3. Those cases where the election had been made on a delinquent return for the year of sale. [1965-2 C.B. at 152-153. Emphasis added.]

Possibly, the problem in *Ackerman* could now be avoided by filing (under 2 above) an amended return for the year of sale since the election made the following year was not inconsistent with, and was, in fact, the installment method. See *Farber v. Commissioner,* 36 T.C. 1142 (1961), affd. on a different issue 312 F.2d 729 (2d Cir. 1963), cert. denied 374 U.S. 828 (1963), which Rev. Rul. 65-297 cites with approval. The *Maid-Rite Steak Co.* case involved a different issue of a purported prior binding election in claiming an investment tax credit, which the court rejected because the purported election involved an *impermissible* method of claiming an investment tax credit. But see *Kerry v. Commissioner,* 89 T.C. 327 (1987). The Technical Information Release and its published embodiment, Rev. Rul. 65-297, were issued because the Service was, in 1965, considering revision of the above regulation, but to date the regulation has not been revised. Accordingly, in its proper sphere, *Ackerman* retains its vitality.

The issue of how or when a valid election of the installment method may be made has been litigated frequently, involving not only section 453 but also its predecessors, section 44 of the Internal Revenue Code of 1939 and section 44 of the Revenue Act of 1928. The cases fall into three major but sometimes overlapping categories: (1) Cases where there has been an election of an available and permissible method of reporting income so that later election of the installment method is precluded; (2) cases as to whether the election of the installment method can be made on amended returns or on late-filed original returns; and (3) cases where there has been an attempted election of an unavailable or impermissible method of reporting income, usually involving mischaracterization of the transaction as something other than a sale, so that no inconsistent reporting method has actually been chosen. While the "binding election" rule is most clearly articulated in the category (1) cases, much of the litigation has involved category (2) or (3) cases.

The lead case on the "binding election" rule is *Pacific National Co. v. Welch,* 304 U.S. 191 (1938). That case articulated the basic rule that where a taxpayer has elected on his return for the year of sale, a valid method of reporting that income other than the installment method, he is bound by that election and may not thereafter elect the installment method. There, the taxpayer had initially reported his income on the deferred payment method whereby the taxpayer recovers its basis before reporting any gain from the sale. That was an available and permissible method, and the taxpayer was bound by its election. In a whole series of cases thereafter, taxpayers who had reported their sales on the completed or closed-transaction basis, reporting the full amount of the gain in the year of sale, have been held to have elected a valid method of reporting income and thus to be precluded from later electing the installment method. See *United States v. Kaplan,* 304 U.S. 195 (1938); *Jacobs v. Commissioner,* 224 F.2d 412, 414 (9th Cir. 1955), affg. 21 T.C. 165 (1953); *Wierschem v. Commissioner,* 82 T.C. 718, 722-726 (1984); *Pollack v. Commissioner,* 47 T.C. 92, 111-113 (1966), affd. on other grounds 392 F.2d

409 (5th Cir. 1968); *Vischia v. Commissioner,* 26 T.C. 1027 (1956).

In applying the "binding election" rule set forth by the Supreme Court in *Pacific National Co.,* the courts have distinguished and refined the concept in regard to how and when the election may be made and as to whether certain reporting positions constitute such an election. Petitioners characterize all of what we have called category (2) and (3) cases as situations where the taxpayer's original choice of reporting income from the sale was "impermissible," and petitioners argue that they had not made an election on their 1980 returns because they too selected an impermissible method. We think this complex line of cases requires somewhat closer analysis for proper application of the "binding election" rule and any exception thereto.

Much of the litigation in this area grew out of respondent's initial administrative position that election of the installment method had to be made on a *timely filed original* return. Rev. Rul. 93, 1953-1 C.B. 82, and Rev. Rul. 56-396, 1956-2 C.B. 298. See Rev. Rul. 65-297, 1965-2 C.B. 152, revoking and modifying, respectively, those rulings; see note 8 *supra.* However, the decided cases, those we have labeled as category (2) cases, reached a different conclusion. The case law has now established that where no payment is received in the year of sale, and where either the original return is silent as to the sale or no return is timely filed for the year of sale, the taxpayer may file an amended return for the year of sale or may file a late return for that year, electing the installment method. *Bookwalter v. Mayer,* 345 F.2d 476 (8th Cir. 1965); *C'de Baca v. Commissioner,* 326 F.2d 189 (5th Cir. 1964), revg. 38 T.C. 609 (1962); *Hornberger v. Commissioner,* 289 F.2d 602 (5th Cir. 1961), revg. a Memorandum Opinion of this Court; *F.E. McGillick Co. v. Commissioner,* 42 T.C. 1059 (1964);[9] *Farber v. Commissioner,* 36 T.C. 1142 (1961), affd. on another issue 312 F.2d 729 (2d Cir. 1963), cert. denied 374 U.S. 828

[9]In that Court-reviewed opinion, we indicated that we would follow the principle announced by the Fifth Circuit in *C'de Baca v. Commissioner,* 326 F.2d 189 (5th Cir. 1964), revg. 38 T.C. 609 (1962). The only area in which we have not allowed an election of the installment method on a late-filed original return has been in fraud cases characterized by attempted concealment of the sale. *Harper v. Commissioner,* 54 T.C. 1121, 1145-1146 (1970). See also *Hicks Co. v. Commissioner,* 56 T.C. 982, 1031 (1971).

(1963).[10] In these cases, where election of the installment method was permitted on an amended return, the result turned on the fact that there had been no payment to report in the year of sale and there had been no prior election of an inconsistent method of reporting the income (either in the year of sale or thereafter). In these cases, where election of the installment method was permitted on a late-filed original return, again there had been no inconsistent method on any return for a later year. In the latter group, the courts concluded that forfeiture of the right to choose the installment method was not a proper penalty for late filing of a return.

In another line of cases, which we have dubbed category (3) cases, the transaction was reported in some fashion on the return for the year of sale. However, in almost every instance, the legal effect of the transaction had been erroneously characterized as something other than a sale, so that the taxpayer in effect neither made nor had occasion to make a choice as to recognition of gain or the method of reporting the gain from the sale. In some cases, the taxpayer erroneously believed the gain from the sale of a principal residence was not recognizable and could be deferred under section 1034. *Spivey v. Commissioner,* 40 T.C. 1051 (1963); *Bayley v. Commissioner,* 35 T.C. 288 (1960). In other cases, the receipts from the transaction were erroneously treated as part of business income (*Reaver v. Commissioner,* 42 T.C. 72 (1964)) or as rental income (*Scales v. Commissioner,* 211 F.2d 133 (6th Cir. 1954), revg. and remanding 18 T.C. 1263 (1952); *Glidden Co. v. United States,* 241 F. Supp. 195 (N.D. Ohio 1964)).

We frequently cite the above cases for the proposition that they allow "a taxpayer to elect the installment method subsequent to filing his tax return for the year of sale when the taxpayer's original choice of reporting income from the sale is an impermissible method." *Wierschem v. Commissioner,* 82 T.C. at 723. As our analysis there (82 T.C. at 723-726) and above shows, this is merely a shorthand description of the principle, and these cases essentially involve a taxpayer's erroneous legal characterization of the

---

[10]See also *Estate of Broadhead v. Commissioner,* T.C. Memo. 1972-195; *Griffin v. Commissioner,* T.C. Memo. 1965-91.

transaction as something other than a sale, so there has been no real opportunity for the taxpayer to make a choice.

Only one case in this category (3) group strictly involves a choice between different methods of reporting the gain from an admitted sales transaction. *Mamula v. Commissioner*, 346 F.2d 1016 (9th Cir. 1965), revg. 41 T.C. 572 (1964). There, the taxpayer's accountant told him he had three available methods for reporting the gain from his sale: (1) The closed-transaction basis, (2) the deferred-payment basis, or (3) the installment basis. The taxpayer elected the deferred-payment method, a method that permits tax-free recovery of basis prior to reporting any taxable gain. The taxpayer fully disclosed the sales transaction on his return for the year of sale. On audit, the facts disclosed that the notes received in the transaction had an ascertainable fair market value, and hence the deferred payment method could not be utilized. The Ninth Circuit concluded that although the taxpayer had elected a method of reporting his gain, a method inconsistent with the installment method, that nonetheless his election was not conclusively binding upon him, because he had made an "impermissible" or "nonallowable choice." The Ninth Circuit stated that it adopted the reasoning of the Tax Court's *Reaver v. Commissioner, supra,* and *Bayley v. Commissioner, supra,* opinions which the Ninth Circuit felt paralleled its own reasoning in the case sub judice. We note that in *Mamula*, the reporting method chosen by the taxpayer was normally an available and proper type of method; it was improper as to that taxpayer because of the particular facts of his sales transaction.[11]

The parties have not cited and we have not found any case with facts akin to those of the present case. Here, there is no question about the legal characterization of the transaction—it was a sale of the land and business in 1979 for $175,000. Petitioners received a payment of $10,000 in 1979. Petitioners filed timely tax returns for the year of the sale but they reported neither the sale nor their receipt of $10,000 that year. On their 1980 returns they reported the

---

[11]Any appeal in the present case would lie to the U.S. Court of Appeals for the Sixth Circuit. Because of the factual differences between the present case and *Mamula*, we need not address at this time and in this case whether or not we agree with the reasoning of the Ninth Circuit in *Mamula v. Commissioner*, 346 F.2d 1016 (9th Cir. 1965), revg. 41 T.C. 572 (1964).

balance of the sales price ($165,000), and reported the sale as a completed or closed transaction that year. The closed-transaction method is a proper method of reporting the gain from the sale, even though the payments of the purchase price were to be made over a 2-year period. The closed-transaction method is inconsistent with the installment method. Accordingly, on these facts respondent says the "binding election" rule of *Pacific National Co. v. Welch, supra,* and its progeny applies and precludes petitioners from electing the installment method.

After the audit, petitioners filed amended returns for the year of sale and attempted to elect the installment method for reporting the gain on their sale. Petitioners do not come within the holdings in the category (2) cases that an election can be made by filing amended returns for the year of sale (1) where no payment was received in the year of sale, and (2) where there has been no prior election of any inconsistent method of reporting the income. Petitioners fail on both counts. Thus, petitioners concentrate on the category (3) cases, arguing that they are not bound by their election of the closed-transaction method because it was an impermissible method; impermissible, they say, because the election was made in the wrong year, in 1980 rather than in 1979, the year of the sale. However, the method itself was proper. What we must decide is whether petitioners' error as to the year renders an otherwise proper method "impermissible" so as to relieve them from their election.

Here, the legal effect of the transaction was never erroneously characterized by petitioners. It was a sale and was always viewed by petitioners as a sale. Thus, most of the "impermissible method" cases are distinguishable for that reason. Whereas the taxpayers in those cases had not had an opportunity to choose a reporting method, petitioners here had the opportunity and made a choice of an available, proper method. Even in *Mamula v. Commissioner, supra,* which actually involved a choice of different methods of reporting the gain from the sale, it was the particular facts surrounding the sale (the use of a note with an ascertainable fair market value) that made the reporting method "nonallowable" or "impermissible." Here, the only facts that were disclosed on audit were the fact that the

sale occurred in 1979, rather than in 1980 when petitioners chose to report it, and the fact that petitioners had received an additional $10,000 in 1979 which they did not report on their original 1979 or 1980 returns. Unlike the situation in *Mamula*, those facts do not make the reporting method used by petitioners, the closed-transaction method, impermissible or nonallowable. The present case thus comes down to whether the fact that petitioners made their election on their 1980 returns, rather than on their original 1979 returns, renders the method impermissible so as to relieve them of the consequences of the "binding election" rule. We think not.

While we have not found any cases exactly on point, we have found cases with parallel situations whose reasoning supports our conclusion. One line of such cases involves the taxpayer's choice of method for depreciation. In those cases, a distinction is drawn between an error in the choice of method and an error in the choice of year.

If a taxpayer tries to select an impermissible method of computing depreciation, he will not be bound by his choice. *Silver Queen Motel v. Commissioner*, 55 T.C. 1101, 1105 (1971). However, that is distinguished from "those cases where the taxpayer has, of his own volition, adopted an acceptable method of computing depreciation and has sought thereafter to change from the acceptable method originally used to another acceptable method which he finds more favorable." 55 T.C. at 1105. This is the classic "binding election" rule and *Pacific National Co. v. Welch*, *supra*, is cited therein. The *Silver Queen Motel* opinion also distinguishes "those cases where the taxpayer has chosen an acceptable method of depreciation but has chosen that method for a taxable year other than the first year in which depreciation might have been taken." 55 T.C. at 1105. It is this group of cases involving an error in the taxpayer's choice of year, rather than an error in his choice of method, that we find persuasive here. *Missouri Public Service Co. v. United States*, 370 F.2d 971 (8th Cir. 1967); *Rodney v. Commissioner*, 53 T.C. 287, 315-317 (1969); *Mitchell v. Commissioner*, 42 T.C. 953 (1964).

In *Missouri Public Service Co. v. United States*, *supra*, the taxpayer elected the straight-line method on its 1954

return and used it on its 1955 and 1957 returns. No depreciation was allowable in 1954 because the property was not placed into service until 1955. Claiming its election was "premature," the taxpayer then tried to change to the declining-balance method. The Eighth Circuit held the taxpayer was bound by its original election, having "made its choice of election either by first adopting a method of depreciation and abortively applying to a year not allowable or by continuing the use of its selected method on the following years' returns." 370 F.2d at 975. Also in *Mitchell v. Commissioner, supra,* the taxpayer made a tentative election in the first allowable year and thereafter continued to use the method in a subsequent year. The later use was held to make the tentative election binding.

In *Rodney v. Commissioner, supra,* we faced a situation quite comparable to the present case. There, the taxpayer did not claim any depreciation on his clinic building in 1957, the year the property was placed into service. He first claimed depreciation on his 1959 return, using the straight-line method. After audit commenced, he tried to switch to the declining-balance method, claiming that his election in 1959 was a nullity since it' was not timely, i.e. not in the year the property was placed into service. We rejected his argument and held he was bound by his later year election of the straight-line method. After analyzing *Missouri Public Service* and *Mitchell,* we held:

> If subsequent use will make a tentative election binding, we see no reason not to impute an election made in a year after the first year the property could properly be depreciated to the appropriate year where the taxpayer has inadvertently made an election in the wrong year. In either case, the taxpayer has had his opportunity to make his choice. It is the taxpayer's choice of year that is in error, not his choice of method. * * * [53 T.C. at 317.]

Accordingly, we concluded that the taxpayer was bound by his choice of the straight-line method.

Another analogous case of an error in choice of year, not in choice of method, is *Thompson-King-Tate, Inc. v. United States,* 296 F.2d 290 (6th Cir. 1961). There, the taxpayer had in an earlier year elected the completed contract method of reporting income, and was bound by that choice. The method selected by the taxpayer was a proper one, but

it was misapplied by the taxpayer, who erroneously reported the income in 1953, the year the project was substantially completed, rather than in 1955, the year of final completion and acceptance of the project. The Sixth Circuit pointed out that the taxpayer had no legal opportunity to choose between reporting the income in 1953 or 1955. Having selected the completed-contract method, the taxpayer had to report the income in 1955. What was involved was not an error in the method selected but in the taxpayer's application of that method, an error in the year.

Here, too, petitioners have selected a proper method of reporting the gain from their sale, the closed-transaction method. Here, too, petitioners have no legal opportunity to choose between reporting the sale in 1979 or 1980. Contrary to their argument, they have not selected an impermissible method. They have merely misapplied the proper method they selected by reporting the income in the wrong year. That error in their application of the acceptable method must be corrected as it was in *Thompson-King-Tate, Inc. v. United States, supra.* As we stated in *Rodney v. Commissioner,* "It is the taxpayer's choice of year that is in error, not his choice of method." 53 T.C. at 317. Accordingly, we hold that petitioners are bound by their election of the closed-transaction method on their 1980 returns, but that method must be properly applied to the correct year, 1979. Thus, petitioners are precluded by the "binding election" rule from switching to the installment method of reporting their gain.

## II. *Allocation of Purchase Price*

The parties seem to agree that at least $93,500 of the purchase price is allocable to ABC, representing the goodwill and going-concern value of the day-care center and nursery school business. The remaining dispute is over the allocation between the Gibsons and ABC of the remaining $81,500, representing the real property and improvements. Respondent determined that the entire $81,500 was allocable to the Gibsons as owners of the real estate. Petitioners argue that the portion allocable to the improvements, which they calculate to be $57,539, is taxable to the

lessee, ABC, not to the Gibsons.[12] On the factual record before us, we cannot accept petitioners' argument.

While it is not clear whether ABC or the Gibsons actually paid for these improvements, we will assume for purposes of our discussion that ABC, as lessee, paid for them. Generally, a lessee's permanent, unremovable improvements to leased realty revert to the lessor upon termination of the lease, and, absent agreement to the contrary, the lessor is not obligated to pay the lessee for the value of the improvements.[13] See *Schneider v. Bank of Lansing*, 337 Mich. 646, 60 N.W.2d 187 (1953); *Rogers v. Goldman*, 249 Mich. 31, 227 N.W. 672 (1929). See also Cunningham, Stoebuck & Whitman, Law of Property, secs. 6.46-6.47 (1984). The record does not establish the terms of the oral lease agreement between the Gibsons and their wholly owned corporation. There is no evidence of any agreement that the Gibsons would pay ABC for the value of the improvements. We are not persuaded by petitioners' argument that the fact that the sales agreement was in the name of the corporation evidences an intent that ABC is to be entitled to the proceeds attributable to its improvements. See note 3 *supra*. It is equally likely that ABC's presence as the nominal seller was simply to ensure it the sales proceeds attributable to the business intangibles. Indeed, after petitioners repossessed the Conant property following Hudson's default, the Gibsons treated the land and the improvements as their property, and at the time of the trial, were trying to sell the property. The ABC Corp. had become wholly defunct, and the Gibsons were not sure that it was still in existence. Petitioners have failed to establish that ABC was entitled to any of the proceeds attributable to the improvements. Rule 142(a).

To reflect the parties' concessions and the foregoing,

*Decision will be entered under Rule 155.*

---

[12]Petitioners presented no evidence to establish the proper allocation of the $81,500 between the realty and the improvements. Rule 142(a).

[13]A lessee may be able to deduct any unamortized balance of the costs of leasehold improvements in the year the lease is terminated. See *Action Distributing Co. v. Commissioner*, T.C. Memo. 1987-377, and cases cited therein. However, the record here establishes neither the costs of such improvements nor the amount of any unamortized balance.